WILLIAM A. REAGAN *vs.* BOSTON ELECTRIC LIGHT COMPANY.

Suffolk.     November 16, 17, 1896. — January 11, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Defective Electric Wire — Due Care — Law and Fact — Contract to repair Roof of Building — Rights of Owner, Electric Company, and Workmen — Evidence.*

In an action for personal injuries sustained by the plaintiff, who was employed in repairing the roof of a building, it appeared that the defendant, an electric light company, had placed on the rear of the roof an outrigger or T-piece, which pro-jected beyond the edge of the roof and overhung the area in the rear of the building; and that two electric wires about ten or twelve inches apart were at-tached to and ran from the T-piece to a standard upon the next building. There was evidence tending to show that the plaintiff, at the time of the acci-dent, was engaged in putting on strips of zinc placed upon the edge of the gutter and extending down the side of the building, close to the T-piece; that he was

on his knees nailing on a cleat and leaning slightly over the edge of the roof, the two wires being directly over him; that in rising from his knees one of the wires struck him in the neck; that he put up his hand, caught the wire, received an electric shock, and was precipitated from the roof to the area below; and that the wires were imperfectly insulated. *Held*, that the question whether the plaintiff was in the exercise of due care was for the jury.

In an action for personal injuries occasioned to the plaintiff by coming in contact with an electric wire over the roof of a building on which he was working, it appeared that he was in the employ of A., who in turn was employed by B., who had a contract with the owner of the building to make alterations and repairs thereon, including the roof, and that, if the work which the plaintiff was doing was not within the contract, the owner's agent had requested B. to have such work done. *Held*, that this was evidence that the plaintiff was rightfully on the roof by an invitation which came *mediately from the owner*, and was engaged in work on the building for the benefit and at the request of the owner.

Although an electric light company is bound, by an agreement with the owner of a building to keep. the roof in repair to which its wires are attached, this does not exclude the owner from the right to make such repairs as he may deem necessary.

At the trial of an action against an electric light company for personal injuries occasioned to the plaintiff by coming in contact with an electric wire stretched over the roof of a building on which he was working, if there is evidence that the plaintiff's employer was engaged, at the request of the owner's agent, to repair the edge of the roof by A., who had a contract with the owner to make alterations and repairs on the building, including the roof, a bill for work done on the building, rendered by A. to the agent and paid by him, containing items of work done by the plaintiff and his fellow employees in repairing the edge of the roof, is properly admitted in evidence.

TORT, for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. Trial in the Superior Court, before *Blodgett, J.*, who allowed a bill of exceptions, in substance as follows.

On July 20, 1893, the plaintiff, who was a roofer by occupation, was employed by Smith and Howard, a firm of roofers, who in turn were employed by one Hezekiah McLaughlin to do certain work on the roof of a building on Tremont Street, in Boston, with the owners of which McLaughlin had a contract to make repairs thereon.

The defendant is a corporation engaged in the business of furnishing electric light in Boston during both the day and the night. For the purpose of the transmission and distribution of electricity for electric lighting, the defendant owned, maintained, and operated lines of wire running through the air over certain of the streets of the city, and over certain of the roofs of buildings therein, some of which lines were attached for their sup-

port to buildings, some to standards or fixtures upon buildings, and others to posts or poles placed in the streets.

In 1883, the owners of the building in question entered into an agreement with the Brush Electric Lighting Company, to whose rights, obligations, and property the defendant succeeded, whereby the owners allowed the corporation to attach its wires and structures to the building, and to run its wires above the building. It was admitted that, at the time of the plaintiff's injury, this agreement was in force, and constituted a subsisting contract between the owners of the building and the defendant. By this agreement the corporation covenanted that it would " keep the roofs of all buildings on which its wires are attached in repair and free from leakage during the time said wires are so attached, no matter how leakage may be caused."

The defendant, about six years before the accident, had placed on the rear of the roof of the building an outrigger or T-piece, which projected beyond the edge of the roof and overhung the area in the rear of the building. Two electric wires owned and operated by the defendant were attached to and ran from this T-piece to a standard or support upon the next building. The evidence was conflicting as to the exact direction in which the wires ran from the end of the T-piece, the plaintiff's evidence tending to show that they ran backward over the roof at an angle of about forty-five degrees above a portion of the roof of the building; and the defendant's witnesses testifying that the wires ran over the area to the structure above mentioned, and at no point passed over or above any portion of the roof of the building. The plaintiff at the time of the accident was engaged in putting on edge flashing, that is, strips of zinc placed on the edge of the gutter and extending down the side of the building, and was working on the right hand side of the T-piece and within three or four feet from it. He testified that the wires ran over his left shoulder as he was facing the area just before his injury. While engaged in his work he came in contact with one of the wires, which was carrying electric current supplied by the defendant, and he received a shock which caused convulsions, and he then fell headlong from the roof to the· bottom of the area, sustaining the injuries complained of. There was evidence that, at the point where the plaintiff came in

contact with the wire, it was situated about two inches away from the rear edge of the building over the area.

The plaintiff testified that the last thing he remembered before receiving the shock was that he was on his knees, driving a nail into a cleat, and leaning slightly over the edge of the roof ; that he did not think then that, as it was in the daytime, there was any electric current in the wires; and that it was necessary for him to come close to the wires in order to do his work.

Other witnesses to the plaintiff's injury, called by the plaintiff, testified that, immediately before the time of his injury, he was on his knees nailing on a cleat and looking to see where he was driving the nail; that at the time of his injury he was in the act of getting back off his knees when the wire struck him in the neck ; that he put up his hand to see what struck him and caught the wire, which doubled him up and threw him off the roof ; that in getting up from his knees he got his head in between two wires ten or twelve inches apart, and struck one of them with his neck; that while he was working on his knees the wires were right over his head and the back of his neck ; that he had to stoop underneath the wires to get a nail on the outside; and that he was nailing on the outside, and " drew back to get some more nails, and the wire struck him somewhere on the neck."

One Collins, a witness called by the plaintiff, testified that, at the place where the plaintiff came into contact with the wire, the covering was bleached and worn off the wire ; that the covering was in a rough state, and in a worn out condition ; and that he could see part of the wire, probably larger than a pin-head, there being little holes in it.

One Gettings, a witness called by the plaintiff, testified that, after the accident, he looked at the wire and saw that the cording underneath it was all worn off ; that the covering of the wire was dark colored when it was first put on, but that it was at the time of the accident faded out, and the thread was almost worn off ; that close to the T-piece, where the wires connected the under part of the wire, the thread was worn off, and on the top part of the wire one could see pinholes ; and that on the under part of the wire, at a distance of about four inches

from the glass insulators situated on the T-piece, the wire was exposed for a space of two inches.

It appeared that the defendant's wires attached to the T-piece had been so attached for about six years prior to the time of the accident; that the wires were of copper with two coverings of cotton braid, each covering being treated with some kind of a chemical; that such coverings are known as "insulation"; that an electric shock from electric light wires comes only through the "grounding" of the electric current on both the positive and the negative wires of the circuit; that zinc is a good conductor of electricity, and if a man should stand on a metal floor or on zinc, and should take hold of a wire and the circuit should be grounded at some other point, he would be likely to get a shock, no matter what the insulation might be; that if zinc on a roof is in contact with a gutter or some other conductor so that the current can get to the ground in any way, and the man is in contact with the zinc, and the electric light circuit is grounded somewhere else, the conditions are such as to render it probable that he will receive an electric shock, no matter what the condition of the insulation may be; and that the defendant's circuits in Boston are divided into districts, in each of which one or more inspectors employed by the defendant are charged with the duty of going over the lines and districts from time to time in order to see whether the wires and the insulation thereon are in proper condition.

One of the inspectors, called by the defendant, testified that within a month prior to the accident he inspected these wires attached to the T-piece, and then found the insulation on them to be in good condition.

Hezekiah McLaughlin, a witness called by the plaintiff, testified that he was a mason and builder and contractor; that in July, 1893, he was engaged in work on the building in question, having a contract with the owners to do a certain amount of work there; and that Smith and Howard, the plaintiff's employers, were employed by him to do some roofing, and to make some repairs on certain parts of the roof.

On cross-examination, the witness testified that Smith and Howard had to patch up round some elevators that he removed from the roof; that he "hired them to do this part of it, patching

around the elevators, — not this connected with this suit at all"; and that he did not have anything to do with Smith and Howard in relation to the work which was being done by these men at the time of the accident.

Russell G. Fessenden, a witness called by the plaintiff, testified that his firm was in the real estate business, and were agents for the owners of the building in question. He testified further as follows:

" Q. Did you have a contract with Smith and Howard to do any work upon the roof of this building? A. No contract.

" Q. Did you employ them to do any work upon the roof? A. Not directly.

" Q. Did you through anybody? A. Yes.

" Q. And through whom? A. Through Mr. McLaughlin.

" Q. Do you say you don't remember whether these men were employed by you, or the firm was employed by you? Do you say you can't remember whether you employed Smith and Howard? A. I didn't see Smith and Howard directly and employ them. I asked Mr. McLaughlin to have some work done which was not in the regular contract.

" Q. In consequence of that were these men employed? A. Yes.

" Q. To repair the roof and stop the leaks? A. Yes. . . .

" Q. Do you remember at all about this work being done? A. I do.

" Q. Do you remember about this tin work being done on the edge of the roof? A. Yes, sir.

" Q. You knew of that personally? A. I did.

" Q. Was it done at that time, about July 20, 1893? A. About that time. . . .

" Q. Whether or not you paid Mr. McLaughlin certain items, charges for work done on July 20, 1893, by the plaintiff and others working for Smith and Howard? A. Well, we paid the bill; that was one of the items in this bill."

The plaintiff then offered the bill in evidence, containing the item above referred to, rendered by McLaughlin to the owners of the building.

The defendant objected to the admission of the bill, or any part thereof, upon the ground that no connection had been shown,

or was offered to be shown, between Hezekiah McLaughlin and Smith and Howard, the plaintiff's employers, or the plaintiff.

The judge ruled that it was competent for the plaintiff to show the item above referred to, and it was accordingly admitted in evidence; and the defendant excepted.

The witness, upon referring to the bill, testified that the item was for "repairing edge flashing," and included the details of materials furnished and labor performed, and was for the work which had been described by the plaintiff and the other witnesses.

At the close of the evidence, the defendant asked the judge to rule that, upon the whole evidence, the plaintiff could not recover, and also presented numerous requests for instructions, all of which were refused. The judge, besides instructing the jury fully upon the questions of reasonable care on the part of the plaintiff, and of negligence on the part of the defendant, instructed them, among other things, as follows:

"Now in this case it is conceded that the defendant corporation had the right to attach its wires to the building, and if the corporation used reasonable care in attaching those wires, and taking care of the wires after they were attached, and the plaintiff was injured, and that injury was simply because there was a necessary danger in the use of the wires in connection with this building, which could not be avoided by the exercise of reasonable care, the plaintiff cannot maintain this action. That is one of the aspects in which the fact that the wires were there by virtue of a contract entered into between the predecessor of the defendant corporation, to whose rights the defendant has succeeded, and the owners of the building, is important.

"But there is another aspect in which this matter is of importance. If it became by reason of the agreement, as it is not disputed it did, the duty of the defendant corporation to make repairs from time to time upon the roof, so far as repairs were needed for the purpose of preventing leakage, then the defendant corporation had the right to assume that it would be called upon to make those repairs, and the repairs would be made by its employees. Now, suppose this corporation had reason to suppose that nobody would be likely to go upon the roof of that

building for the purpose of making repairs, because the corporation assumed that naturally, by reason of its agreement, it would be called upon to make the repairs, then of course the corporation was not required to anticipate that there would ever be upon the roof of that building so many persons as would be likely to go upon it if the owners were to make repairs. And in determining what would be reasonable care on the part of the defendant corporation in looking after the condition of its wires, keeping them covered or insulated, or in the position of the wires as originally attached, the corporation may take into consideration the number of persons likely to go upon the roof who were liable to be injured."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. W. Burdett & C. A. Snow*, for the defendant.

*B. Hall*, (*M. W. Brick* with him,) for the plaintiff.

FIELD, C. J.   It is somewhat doubtful whether there was sufficient evidence of due care on the part of the plaintiff, but on the whole we think that this question was for the jury. *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583. *Griffin* v. *United Electric Light Co.* 164 Mass. 492.

There was abundant evidence that the plaintiff was on the roof for the purpose of doing work for the owners of the building. He was in the employ of Smith and Howard, who were employed by one McLaughlin, who had a contract with the owners to make alterations and repairs upon the building, including the roof; if the work the plaintiff was doing was not within the contract, there was evidence that the agent of the owners had requested McLaughlin to have this work done. This was evidence that the plaintiff was rightfully on the roof by an invitation which came mediately from the owners, and was engaged in work on the building for their benefit and at their request. *Griffin* v. *United Electric Light Co., ubi supra.*

It is contended by the defendant, that the effect of the contract made with the owners of the building by the Brush Electric Lighting Company, to whose obligations the defendant had succeeded, was such that the defendant was bound to repair the roof. If this be so, still the owners of the building could repair the roof if they chose. The defendant was not the lessee or the

occupant of the roof.  It had the right undoubtedly, while the contract continued in force, to enter upon the roof for the purpose of doing everything which it was required to do by the contract, but this right did not exclude the owners from making such repairs upon the roof as they thought necessary.  Whether the repair of the gutter which the plaintiff was engaged in making was a repair of the roof within the meaning of the contract, need not be determined.  If it be so regarded, still the charge of the presiding justice upon the effect of the contract upon the duty of the defendant towards the plaintiff was sufficiently favorable to the defendant.

The court admitted, against the objection of the defendant, a bill for work done on the building, rendered by McLaughlin to the agent of the owners, and paid by the owners or their agent. This bill contained items of work done by the plaintiff and others, employees of Smith and Howard, and included the work of repairing the gutter which the plaintiff was doing when he was injured.  The ground of the defendant's objection is stated in the exceptions to be " that no connection had been shown, or was offered to be shown, between Hezekiah McLaughlin and Smith and Howard, the plaintiff's employers, or the plaintiff." But the testimony of Fessenden, the agent of the owners, was evidence that these men were employed to repair the edge of the roof at his request.                *Exceptions overruled.*