JOHN J. BERGIN, ADMINISTRATOR, *vs.* THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY AND THE MERIDEN ELECTRIC RAILROAD COMPANY.

Third Judicial District, Bridgeport, Oct. Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It is not unlawful for a telephone company and an electric street railway company to use the same poles in a city street; especially when requested to do so by the municipal authorities.

The conclusions of the trial court as to negligence and contributory negligence cannot be reviewed upon appeal, unless it appears that an incorrect standard of duty was applied, or some rule or principle of law, applicable to the facts found, was violated.

At the request of the municipal authorities the defendants agreed to use a common pole in certain streets, and the shifting of the wires from the old to the new poles was undertaken by the telephone company. *Held* that there was no absolute rule of law which imposed the duty of inspecting and testing the guy-wires and circuit-breakers of the street railway company, upon the telephone company rather than upon its employés who shifted the wires.

Whether the master or servant should discharge this duty of inspection in a particular case, depends upon a variety of circumstances, and in some instances becomes a question of fact for the determination of the trial court.

A telephone lineman who knows, or has reasonable cause to believe, that the wires of an electric street railway company are in a dangerous condition, is bound to use due care, in view of such knowledge, to avoid injury to himself, notwithstanding the negligence of the railway company.

The plaintiff, who sued as administrator to recover damages for personal injuries resulting in the death of his intestate, assigned as

error several rulings of the trial court in respect to evidence. *Held* that these rulings, even if erroneous, were harmless, inasmuch as it clearly appeared from the record that the plaintiff's right of recovery was defeated by the contributory negligence of his intestate, —a conclusion which the rulings complained of in nowise affected. Upon a hearing in damages after a default, the plaintiff, having shown the extent of the injury, is entitled to substantial damages, unless the defendant proves either his own freedom from negligence or contributory negligence of the plaintiff.

[Argued October 26th—decided November 30th, 1897.]

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and heard in damages to the court, *Shumway, J.;* facts found and judgment rendered for nominal damages only, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The complaint alleged that the defendants were, without authority, operating their system jointly; that defendants were negligent in using the defective circuit-breaker described below, and in permitting the deceased to work at the place in question when they knew, or by the exercise of a reasonable supervision should have known, that the circuit-breakers were defective; that plaintiff's intestate was in the exercise of due care, and was not aware that it was his business to know of the dangerous condition of the span-wire by reason of the defective circuit-breaker.

The following facts were found by the court: The defendant, the Southern New England Telephone Co., in operating its telephone lines, has frequent occasion to take down and build lines of wires; and frequently the municipal authorities desire the wires of the telephone company, of the street railway company, and of the electric company, to be on the same pole.

The plaintiff, on November 13th, 1895, was appointed administrator of the estate of Timothy Delaney, an experienced lineman of the defendant telephone company, who was killed at Meriden on August 12th, 1895, while upon the ground coiling a wire of his employer, which rested on a cross-arm of a pole jointly used by the defendants.

The Meriden Electric Railroad Company is by its charter authorized to carry on the street railroad business in the city of Meriden, upon Main street and elsewhere, by electricity, by means of the overhead or trolley wire system. The current of electricity used by the telephone company is harmless. The current used in the electric street railway company is between 500 and 550 volts, and while not usually fatal, is dangerous.

The telephone company management at the time of the accident, was as follows : a president, who is the general manager of all its departments ; a general superintendent, who has general charge of all construction work throughout the State, more especially relating to the plans of such work ; two division superintendents, whose duty was to carry out the orders of the general superintendent, and oversee the construction work in their departments. The western department, where the accident occurred, was in charge of one W. S. Crofut. The actual work of construction and changes was done by gangs of workmen, each being assigned to a separate job. At the time of the accident there were several gangs at work under the general superintendence of Crofut. Each gang consisted of a foreman, two or three or more linemen, and two or three or more groundmen. The groundman works mainly on the ground, digging post holes and other such work. A lineman is frequently termed a climber; his special duties are in climbing poles and working at the wires, cross-arms, etc., at the tops of the poles. He is frequently required to do ground work. The foreman gives orders to the men during the course of the work. He is equipped with apparatus for climbing poles, and is expected to climb poles and work at the wires at the top of the poles, as occasion may require. The division superintendent gives no instructions to the gang as to how the work shall be performed in detail.

At the time of the accident Delaney, the deceased, had been in the employ of the telephone company for many years; first as a groundman, but most of the time as a lineman. He was a competent lineman, familiar with the nature of the business in which he was employed.

At the request of the city of Meriden the electric street railway company and the telephone company agreed to use a common pole through certain streets, and the work of shifting the wires from the old poles upon the new line of poles was performed by the telephone company. The trolley wire of the electric street railway company, where the accident happened, was held in position by a span-wire directly crossing the street from pole to pole, and from which the trolley wire was hung. Then from each of the two opposite poles there ran a wire towards the next two opposite poles, and in a diagonal direction, meeting at the center, between two sets of poles on the trolley. These wires are called guy-wires. They are connected directly with the trolley wire, their object being to keep the trolley wire from slipping lengthwise. A short distance from the junction of these guy-wires with the trolley wire, the electric street railway company had inserted what is called a circuit-breaker. This is a ball made up of insulated substance, the wire connecting at one and the other side of it, and thus the current of electricity is arrested. It was the usual method of construction so far as the guy-wire is concerned. These circuit-breakers ordinarily perform their work successfully. They were put in by the street railway company in the original construction of the work, and the telephone company was not expected to overhaul the circuit-breakers on these guy-wires in the work of shifting the wires of both companies to and upon the new poles. When for any cause a circuit-breaker becomes sufficiently defective, then the electricity passes through the circuit-breaker upon the wire beyond.

Delaney had, long before the accident in question, received the printed book of the company, containing its rules, among which was the following: "The company will not be liable any further than above for doctors' fees and other expenses incurred by reason of accidents, and employees are cautioned against placing themselves in hazardous positions, climbing unsafe poles, handling electric light and power wires;" and his attention had been specially called to this rule. He had also been personally shown by Mr. Crofut, when at work

upon a job of a similar character in Ansonia, the danger arising from the possible escape of the electric current from street railway wires upon the wires of the telephone company, and it had been pointed out to him by Mr. Crofut at that time how he could detect it. A common method, then shown to him by Crofut, is by applying to the suspected wire one end of a wire the other end of which is in the ground, to find out by the flashes whether the electricty passes from the suspected wire into the wire reaching to the ground. Such method of inspection was also commonly and well known among linemen.

Linemen are employed by the telephone company, among other things, for the purpose of doing work which is dangerous by reason of the possible contact of the telephone wires with highly charged wires of the street railway or other companies. The linemen are to do their own testing in such work; the telephone company has no other men than the linemen to do the testing, as the linemen knew; there was nothing to prevent Delaney from testing the guy-wire; and the linemen on this job were furnished with all the tools, appliances and wires with which to test wires of the electric street railway company.

One Butler was foreman of the gang of men set to work upon this job of transferring both sets of wires to one pole, the upper part of which pole was to be the exclusive property of the telephone company, and the lower part of the street railway company. He cautioned Delaney as to the dangerous character of the work, especially the dangers which might come from the escape of the powerful electric current in the trolley wires into some of the wires which they might be called upon to handle. In the previous progress of this Meriden job there had been called to Delaney's knowledge two instances where the circuit-breakers of the electric street railway company on guy-wires were defective, and where the electric current passed through the trolley wires upon the telephone wires, and caused considerable damage in burning out telephones, etc., although there was no damage to persons. In these cases the electric railway company furnished new

circuit-breakers, which the linemen of the telephone company inserted in place of the defective circuit-breakers, as Delaney well knew. The work of insertion, to a lineman, is insignificant in point of time or skill. Delaney was the next man in the gang, and in the absence of Butler had the charge thereof.

The accident occurred by reason of a defective circuit-breaker on one of the guy-wires, in the following manner: Two linemen in the gang, about three days before the accident, in the course of their work had unfastened this particular guy-wire from its old pole and lashed it upon the new pole. In so doing they felt no electric shock. They were on a wooden pole, which served as a non-conductor. Whether being on a wooden pole a person will receive a shock of electricity or not, depends upon a variety of circumstances. A day or two after the guy-wire had been lashed to the new pole, one Flannigan, a groundman, was sent up the new pole to its top for a certain telephone purpose, and on his way up took hold of the guy-wire, on which was the defective circuit-breaker, and felt a distinct shock of electricity. On his way down the pole, after completing his work, he carefully avoided touching that wire. At this time Delaney, Flannigan, and another groundman were working together, and Butler, the foreman, was absent. Meeting Delaney at the foot of the pole Flannigan said to him that he had just had a shock from that guy-wire, indicating which one it was. Delaney made light of it and did not take any steps to test the accuracy of Flannigan's information, nor did he report the same to Butler. A short time afterwards it became necessary to take down a telephone wire which had been strung up on top of the new poles. Such work is done by cutting it at various places, then taking it off the poles, and coiling it. Butler assigned one Davis, a lineman, to coil the wire, and Delaney to cut it, and then went off to another part of the job at some considerable distance, giving no other instructions as to how the work should be done. Delaney told Davis to cut the wire, and he, Delaney, would coil it up. Davis cut the wire at the proper place, and Delaney began to coil it up. In doing so he pulled it directly from the top of the poles on which it

rested; and it was perfectly obvious to him that the way in which he was doing the work would bring the telephone wire directly upon the guy-wire pointed out to him by Flannigan, as above described, and which in fact contained the defective circuit-breaker. He was pulling and coiling the wire but a short distance from the pole to which was lashed the guy-wire containing the defective circuit-breaker, and this pole was the nearest one to his place of work. Obviously, when the wire should be pulled off the pole beyond, it would drop from the last pole and strike the guy-wire which in fact was charged with the electric current from the trolley. He paid no attention to the manner in which his wire would come upon the guy-wire, nor did he take any steps to prevent the telephone wire from striking the guy-wire. There were two methods usually employed by gangs in taking down a telephone wire from above a dangerous electric wire. One was for a man to take a rope and fasten one end to the wire, and guy it off from any possible contact with the dangerous wire. Another was for a lineman to climb a telephone pole and take the wire, which is not very heavy, from the telephone pole and throw it off the arm on the side opposite the guy-wire, thus getting it off upon the ground before coiling it. There were ropes in the gang team of the telephone company upon the premises, and Delaney could have had the services of one of the gang, if he had asked for them. It was also entirely easy for him, alone, to have taken the wire off the pole in question, by throwing it into the street, and away from the dangerous guy-wire. In pulling and coiling the wire, standing at the same time on damp, moist ground, and his clothing being wet with perspiration, the telephone wire struck the dangerous guy-wire, and Delaney instantly fell forward on his face, became at once unconscious, and died in a few moments.

Except as above stated, there was no knowledge or information in any officer, agent, or employee of the telephone company, or of the electric railroad company, of the defective condition of this circuit-breaker.

On the trial it was shown that the plaintiff, before he was

appointed administrator, applied to the Southern New England Telephone Company for funds with which to properly bury Delaney. The proper officers of the telephone company, protesting that the company was not liable for the accident, declined to give anything unless all claim against the company on account of the accident should be released and discharged. Thereupon it was agreed between the plaintiff and the telephone company that all claims against the company should be released and discharged, and the company would furnish funds to bury the deceased. In pursuance of such agreement the telephone company did furnish funds for the suitable burial of Delaney. Subsequently the plaintiff took out letters of administration upon the estate of Delaney, and brought this suit, but has never refunded said money. The telephone company claimed upon the trial that the agreement of the plaintiff and his conduct, as above described, were the agreement and conduct of an administrator *de son tort*, and effectually discharged the cause of action set up in the complaint. The defendant, the street railway company, claimed that such discharge of the telephone company operated as a discharge of it also. To the admission of this evidence the plaintiff objected. The objection was overruled, and the plaintiff excepted; but the court did not rule that these facts constituted a release of the cause of action.

The defendants also offered the testimony to show that the plaintiff made application for his appointment as administrator, as a creditor of the estate of Delaney, that he was the active man in the matter, and that this, in connection with his conduct in assuming to settle all claims with the telephone company, made it admissible; especially so, as said application disclosed that the persons entitled by our law of distribution to the avails of this suit were residents of Ireland, and consequently Bergin was the one who did whatever was done, both in procuring funds to bury Delaney, in bringing this suit, and in having an administrator appointed. The court admitted this evidence as bearing upon the claim that the plaintiff at the time he made the settlement with the telephone company was an administrator *de son tort*, and to this ruling the plaintiff excepted.

At the time of the injuries complained of, there was an instrument in use whereby, at the power-house of an electric railroad, at a time when the cars are not running, any leakage by means of defective circuit-breakers, or otherwise, could be ascertained and located; but the defendant, the Meriden Electric Railroad Co., had no such instrument at its power-house on or prior to August 12th, 1895.

The construction of the lines of both defendants was of standard design and ordinarily suitable for the purpose for which each was intended, and the appliances used by both defendants were ordinarily competent and reasonably adapted to their use.

The instrument above referred to would not disclose any leakage from a circuit-breaker to a pole, under all circumstances, but would disclose a leakage into the ground.

In the course of the trial the defendant, the Meriden Electric Railroad Company, offered one Edmund C. Boynton, an electrical expert and, among others, asked him the following question : "Q. Now, Mr. Boynton, suppose that a man is coiling up wire which he is taking down from the poles; pulling it down; pulling off the poles, not coiling at this time, and suddenly receives an electric shock from off that wire, and is thrown to the ground, so that he falls upon the wire when the wire is about his body and his arms, more or less, and the ground is wet, and his clothes are wet with perspiration, what have you to say as to the conditions of such a case so far as receiving the full current of electricity ?" To this question the plaintiff objected, on the ground that some of the assumptions in the question had no foundation in fact : first, that the wire was coiled around his arm; second, that he was walking away from the pole. The question was allowed, and the plaintiff duly excepted. The evidence was conflicting as to whether the deceased was walking and facing away from or towards the pole at the time he received the shock; also as to the exact manner in which he was holding the wire.

During the trial the Meriden Electric Railroad Co. offered the notice required by law in such cases, which had been served on it, for the purpose of showing the injuries for which

damage was claimed. To its introduction the plaintiff objected, on the ground that as this was a hearing in damages after a default, the sufficiency of the notice was admitted by the default, and all question of the notice was eliminated from the case. The notice was ruled in, and the plaintiff duly excepted.

During the trial the plaintiff offered to prove what was said by Butler, who was the foreman in charge of the men working for the telephone company, about the said defective insulator at the time it was taken off some days subsequent to Delaney's death, and relating to the then condition of said insulator. The court excluded it and the plaintiff duly excepted. The plaintiff then offered to prove the said Butler's statement about the said insulator when it was removed, to show the defective condition of the same when it left the factory, and before it had ever been used. The court ruled the statements out on the ground that they were hearsay, to which ruling the plaintiff duly excepted.

The evidence offered at the hearing against the electric railroad company was made applicable to the hearing had against the telephone company.

Upon the foregoing facts the plaintiff claimed : that the defendants were liable as joint tort feasors for the injuries to Delaney resulting in his death, because they were at said time and place jointly using and employing their poles and wires without legislative authority; that the Southern New England Telephone Company was guilty of the only negligence causing the injuries; that the Meriden Electric Railroad Company was guilty of the only negligence causing the injuries; that the combined negligence of the defendants caused the injuries ; and that the plaintiff was entitled to substantial damages.

The court did not rule as claimed by the plaintiff, but assessed nominal damages only. And the court finds from the foregoing facts, if such conclusion is a question of fact, that said Timothy Delaney was guilty of negligence materially contributing to his injury, and the Southern New England Telephone Company was free from negligence.

*James P. Pigott* and *Cornelius J. Danaher*, for the apellant (plaintiff).

*John W. Alling* and *James T. Moran*, for the appellee (So. New Eng. Tel. Co.).

*Seymour C. Loomis*, for the appellee (Mer. Elec. Ry. Co.).

HALL, J.   It was not unlawful for both defendants to use the same poles.   Such joint use was with the consent of both companies, and at the request of the municipal authorities. It has not been shown to be necessarily attended with increased danger.   By reducing the number of poles the highway is used with greater convenience.   Full control of the location of such wires and structures is given to the local authorities by § 3946 of the General Statutes and § 3 of Chap. 169 of the Public Acts of 1893.

The court has found that the defendant telephone company was not negligent.   This is a question of fact which it has been repeatedly held cannot be reviewed by this court upon an appeal, unless it appears that the trial court did not apply the correct standard of duty in reaching its conclusion, or violated some rule or principle of law applicable to the facts as found.   *McAdam* v. *Central Ry. & Elec. Co.*, 67 Conn. 445; *Dundon* v. *New York, N. H. & H. R. Co.*, ibid. 266; *Sprague* v. *New York & N. E. R. Co.*, 68 id. 345.

The degree of care and duty imposed by law was apparently applied to the defendant telephone company by the trial court, in testing its conduct in regard to negligence.   Neither its conclusion from the facts found, nor any ruling of the court during the trial, indicates that it did not charge the telephone company with its legal duty as to providing for its employees a reasonably safe place and reasonably safe tools and appliances for their work, and competent co-laborers.

But it is said that this rule imposed upon the telephone company, as a matter of law, the duty of inspecting and testing the guy-wires, or the circuit-breakers of the electric railroad company, and that it is apparent that that duty was not placed upon the telephone company by the trial court.

There is no such absolute requirement of law. Whether the employer or the employee should discharge such duty must depend upon the circumstances of each particular case. In many instances either may properly perform that work; and in some cases who should perform that duty is a question of fact to be determined by a variety of circumstances, such as the nature of the task of inspection, the skill, opportunity, and means of the workman to properly do it, and the terms of the contract of employment. *McGorty* v. *Southern New Eng. Telephone Co.*, 69 Conn. 635.

The facts found in the present case clearly show, and the court held, that when in the performance of the work in which they were engaged it became necessary to handle a wire of the electric railroad company, or when a contact with such wire was likely to occur, the duty devolved upon the servant and not upon the master to first ascertain whether such wire was charged with electricity.

As to the negligence of the electric railroad company, the trial court has not decided adversely to the plaintiff. The extent of the injury having been shown, the plaintiff was entitled to a judgment for substantial damages against the defendant who should fail to show either that it was not negligent, as alleged, or that the injury was the result of the contributory negligence of the deceased. *Sprague* v. *New York & N. E. R. Co., supra.*

In its effort to show that it was free from fault, the defendant electric railroad company failed. From the facts found the trial court evidently, and we think justly, concluded that the electric railroad company, "in the construction and operation of the appliances" for using in the public streets an agency so dangerous to human life, did not take the required precautions for the safe treatment of such an agency, and "for providing against all dangers incident to its use." *McAdam* v. *Central Ry. & Elec. Co., supra.* But unless the court erred in holding that Delaney was guilty of contributory negligence, the plaintiff would gain nothing by a decision that both the defendants were negligent. That is the controlling question in the case, and unless the ruling of the

court below upon that point ought to be reversed, it seems unnecessary to consider the other questions raised by plaintiff's counsel.

The complaint alleges that it was not Delaney's "business" to know the unsafe condition of the guy or span-wire. It is found by the court that in "doing work which is dangerous by reason of the possible contact of the telephone wire with the highly charged wires of the street railway or other companies (and this, the record shows, is work which the linemen of the telephone company are frequently required to perform), the linemen do their own testing;" that they know that there are no others employed by the telephone company to do such testing, and that they are supplied with suitable appliances for testing such wires. Delaney was an experienced lineman, acquainted with the duties and dangers of his employment. As against the telephone company, his negligent failure to perform one of the duties of his employment must defeat a recovery for an injury caused by such failure.

The relation of Delaney to the electric railroad company was different. As he was not their employee he was under no contract duty to test their wires or circuit-breakers. Under different circumstances he might have assumed that the electric railroad company was performing its duty, and using suitable and safe appliances to prevent the escape of electricity from the main, or trolley wire, to the guy-wires. But when the accident happened he knew, as an experienced lineman, that such was not the fact, and that it was unsafe to act upon such a belief. He had been expressly warned of the danger of a contact with wires of this kind. Two instances upon this same work, of damage caused by the escape of electricity to the telephone wires by reason of defective circuit-breakers, had been called to his attention, and a fellow workman but a day or two before this accident pointed out to him this particular guy-wire as one from which he had himself just received a shock. With such knowledge and after such warning Delaney heedlessly pulled the wire, which he was coiling, from the arm of the telephone pole, in such a manner that it would obviously fall, as it did, upon the guy-wire, and when,

as the court finds, it would have been easy for him to have thrown the wire from the pole so as to avoid contact with the dangerous guy-wire.

The defendant electric railroad company can be only liable in this action for an injury caused by its negligence, to one who was himself in the exercise of ordinary care. Its negligence did not excuse Delaney from exercising such care to avoid an injury. Applying that test to the conduct of Delaney, namely, the care which a person of ordinary prudence and judgment should have exercised under similar circumstances—and we have no reason to think that any different standard was applied—the trial court has found he was not in the exercise of due care, as alleged in the complaint, and that his negligence essentially contributed to cause his injury. This conclusion of the court is final. *Peltier* v. *Bradley D. & C. Co.*, 67 Conn. 42. Were it reviewable we should say it was fully sustained by the facts found.

The action of the court in receiving the evidence offered to prove a discharge by the plaintiff, before he was appointed administrator, of the cause of action against the telephone company, could not have harmed the plaintiff. The court very properly refused to hold that the facts proved constituted a release. *Camden* v. *Fletcher*, 4 Mee. & W. 378; *Taylor* v. *Moore*, 47 Conn. 278. Had the court held that such facts constituted a release of the alleged cause of action, the record shows that by reason of the contributory negligence of Delaney there was no cause of action which could have been discharged.

Manifestly the plaintiff was not prejudiced by the rulings of the court in permitting the hypothetical question to Boynton; in admitting the notice which had been served upon the electric railroad company, and in excluding proof of the declarations of Butler. We think these rulings can be sustained; but assuming that they were erroneous, as the plaintiff's right to recover more than nominal damages is defeated by Delaney's contributory negligence, and as these rulings could not have affected the trial or decision of that question, the plaintiff was not injured thereby and we have no occasion to discuss them further.

We have considered all the questions which we think are involved in the rulings and decision of the court below. At least twenty of the twenty-seven reasons of appeal assigned, seem to be unnecessary for the proper presentation of those questions in this court.

There is no error.

In this opinion the other judges concurred.