Argued April 1, decided June 22, 1909.

## GENTZKOW v. PORTLAND RAILWAY CO.

[102 Pac. 614.]

ELECTRICITY — INJURIES FROM CONSTRUCTION AND MAINTENANCE OF
  STREET RAILROAD—CARE REQUIRED.

1. An electric railway company maintaining and controlling a trolley system must exercise the utmost degree of care in the construction, maintenance, inspection, and repair of its wires, so as to keep them harmless at places where persons are liable to come in contact with them, and its duty is not lessened as to servants of a telephone company, where under an agreement, it is permitted to attach its wires to poles of the telephone company.

ELECTRICITY — INJURIES INCIDENT TO PRODUCTION AND USE — CARE
  REQUIRED.

2. Where an electric railway company and a telephone company jointly use a structure to which the wires of each are attached, each is under the same obligation to the other as persons having common rights in a place are to one another, not negligently to place a dangerous substance on the common territory, where it may be reasonably anticipated that others having common rights may be injured.

ELECTRICITY — INJURIES INCIDENT TO PRODUCTION AND USE — CARE
  REQUIRED.

3. An electric railway company permitting for a day and a half a circuit breaker to be displaced, so as to allow a wire of a trolley system to come in

contact with a telephone wire, is guilty of actionable negligence, irrespective of how the displacement occurred.

ELECTRICITY — INJURIES INCIDENT TO PRODUCTION AND USE — CARE REQUIRED.

4. An owner of electrically charged wires, which became disarranged without his negligence, is entitled only to a reasonable time after the condition arises, in which to discover and remove the dangers resulting therefrom.

ELECTRICITY — INJURIES INCIDENT TO PRODUCTION AND USE — CARE REQUIRED.

5. An electric railway company, maintaining a trolley system, is under the duty of continuous inspection of its wires.

ELECTRICITY — INJURIES INCIDENT TO PRODUCTION AND USE — CARE REQUIRED.

6. In the absence of proof that wires forming a part of a trolley system were cut by trespassers, the inference is that it was done by some one on behalf of the owner of the system, for the purpose of rearranging the position of the wires.

ELECTRICITY — INJURIES INCIDENT TO PRODUCTION AND USE — CARE REQUIRED.

7. Evidence *held* sufficient to go to the jury on the issue of the negligence of an electric railway company maintaining a trolley system resulting from its permitting its trolley service wire to fall on a trolley wire and thereby permit the escape of electricity.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

8. The burden of proving contributory negligence is on defendant, and plaintiff need not show freedom from negligence.

NEGLIGENCE— CONTRIBUTORY NEGLIGENCE –EVIDENCE.

9. Where the evidence offered to establish negligence of defendant, resulting in injury to plaintiff, showed that plaintiff was guilty of negligence, without which the injury would not have occurred, plaintiff could not recover.

NEGLIGENCE—ASSUMPTION OF RISK.

10. Where no contract relation existed between plaintiff, suing for a personal injury, and defendant, the doctrine of assumption of risk, as distinguished from contributory negligence, did not apply, unless plaintiff knew and appreciated the danger and voluntarily put himself in the way of it.

ELECTRICITY —INJURIES FROM PRODUCTION AND USE— CONTRIBUTORY NEGLIGENCE.

11. One who knew, or who should have known, that wires supporting a trolley service wire were charged with a dangerous current of electricity, and who voluntarily exposed himself to the risk of being shocked thereby, was chargeable with contributory negligence precluding a recovery for the injuries received.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

12. Contributory negligence will not in all cases be imputed, as a matter of law, to a person who receives an injury from a danger, simply from the fact that it might have been seen, because the nature of his duties or surrounding circumstances may be such as to distract his attention to other objects, and under such circumstances the question is for the jury.

ELECTRICITY—INJURIES FROM PRODUCTION AND USE — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

13. Whether an employee of a telephone company coming in contact with an electrically charged iron peg in a telegraph pole, in consequence of the

negligence of an electric railway company maintaining a trolley system, was guilty of contributory negligence, *held*, under the evidence, for the jury.

ELECTRICITY—INJURIES FROM PRODUCTION AND USE — CONTRIBUTORY NEGLIGENCE.

14. An employee of a telephone company may assume that a wire of an electric railway company not intended to carry electricity and attached to a telephone pole, under an agreement with the telephone company, is harmless.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

15. Where contributory negligence is urged, as a ground for nonsuit, or for a verdict for defendant, it must appear, after considering the evidence most favorably to plaintiff, that reasonable men would find, without any reasonable probability of differing in their views, either that plaintiff knew and appreciated the danger, or that ordinarily prudent men would acquire such knowledge and appreciation.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE SLATER.

This is an action by George H. Gentzkow against the Portland Railway Company to recover damages for personal injuries alleged to have been sustained by plaintiff from receiving an electric shock, caused by the negligence of defendant in permitting and allowing its trolley service wire to sag and fall upon and across the the north trolley wire of its double-track street railway system on Russell street, in the city of Portland, Oregon, so that the circuit breaker, attached to the north end of the service wire, was upon the south side of the trolley wire, and permitted an ordinary uninsulated galvanized wire, leading from the circuit breaker to a telephone pole on the north side of the street, to come in contact with the trolley wire and become heavily charged with a dangerous current of electricity. The telephone pole was the property of the Pacific States Telephone Company, and plaintiff, as its servant, and while in the discharge of the duties of his principal, and without knowledge of the displacement of defendant's wires, ascended the telephone pole, and, coming in contact with an iron climbing peg, to which defendant's wire was attached, received a severe and dangerous electric shock, causing him to be thrown and precipitated to the ground, a distance of about 28 feet, breaking his leg and otherwise injuring him.

Defendant denies any negligence on its part and affirmatively alleges that any injury which plaintiff suffered resulted from his own want of care and contributory negligence. At the close of plaintiff's case defendant interposed a motion for a nonsuit, which at that time was denied, but at the close of defendant's case, was renewed and granted; and, judgment having been entered against plaintiff, he has appealed.    REVERSED.

For appellant there was a brief over the names of *Mr. George W. Caldwell* and *Messrs. Gammans & Malarkey*, with an oral argument by *Mr. Dan J. Malarkey*.

For respondent there was a brief and oral arguments by *Mr. Ralph W. Wilbur* and *Mr. Arthur M. Dibble*.

MR. JUSTICE SLATER delivered the opinion of the court.

The testimony tends to show that plaintiff was employed as a lineman by the Pacific States Telephone & Telegraph Company, which owned and operated a telephone line along the north side of Russell street, in Portland. His duty was to locate and remove troubles in the telephone service due to crossed wires and similar causes, and he had been so employed for about one year, but did not consider himself an experienced lineman. On and prior to August 8, 1904, defendant owned and operated a double-tracked street car line running east and west on Russell street. The cars were propelled by electricity, transmitted through trolleys, which were in contact with heavy copper wires called "trolley wires," suspended over the center of each track, and parallel therewith. On the south side of Russell street the Portland General Electric Company, a third corporation, owned and maintained a line of poles, which carried its electric light wires, and also a wire to transmit electric currents for power purposes. Attached to this line of poles, at the height of about four feet above the level of the defendant's trolley wires, was what is known as

a "feed wire," charged with a heavy current of electricity for the propulsion of defendant's cars. This current was transmitted to the trolley wires by an insulated copper wire, called a "trolley service wire." One of its poles was located about 100 feet east of Williams avenue and standing near the curb line of the street, and was opposite to and south of the telephone pole on the north side of Russell street, on which plaintiff was injured. A trolley service wire, connected with this feed wire, extended northerly from this pole, across, and about three feet above, the trolley wires at right angles therewith, and was connected with each of them by an upright wire. The trolley service wire proper terminated a short space beyond the north trolley wire, where there was interposed a circuit breaker. This instrument was made of two hollow porcelain knobs, or spools, firmly joined at an interval by iron or steel straps, so that when wires were attached to each spool at the opposite ends thereof there would be no metallic connection of such wires. Attached to the north end of this circuit breaker was an ordinary uninsulated galvanized wire, which extended northerly across the remainder of the street and was attached to the telephone pole by being wound around it. The purpose of this galvanized wire was to furnish a support to the trolley service wire and keep it suspended above the trolley wires, and was intended to be free of any electric current. On and near the top of this telephone pole there were a number of cross-arms, to which were attached telephone wires, and on the east and west sides of the pole, and below the cross-arms, wre driven a number of iron spikes, or pegs, at intervals, to serve as steps for linemen when climbing the pole. One of these spikes was located at the place where defendant's wire support for the trolley service wire pased around the pole, and it touched, or was wound around, the peg. A fire alarm signal wire running to an engine house near by was also attached

to this pole at a point four or five inches below the next iron peg above the one in contact with defendant's wire. There was no electric current in the signal wire, except when an alarm was being sounded, and then only a small and harmless current. For a day and a half to two days prior to the time of the time of the accident, the circuit breaker was not in its proper position relative to the trolley wire; but, because either the trolley wires had been raised by the servants of the defendant, or because the poles supporting the service wire had been moved towards the street by the owners thereof, thereby slacking the wire, the north trolley wire and the uninsulated galvanized wire were in contact at a point just north of the circuit breaker, the latter lying upon the trolley wire so that the circuit breaker hung over on the south side of the trolley wire. So long as this circuit breaker was in a proper condition, and in its proper place, no current could pass into the galvanized wire which extended from it to the telephone pole; but, when it was in the position above stated, the galvanized wire, from its contact with the trolley wire, became charged with a heavy current, and thus rendered it, and the iron peg to which it was attached, dangerous to any one coming in contact therewith, and at the same time with some other conductor having connection with the earth. The signal wire, being a grounded wire, furnished this agency.

Plaintiff was employed as a lineman by the telephone company, and had been thus engaged for about one year. He was not considered an expert lineman, as three years' service was required to attain that efficiency although he had had sufficient experience to know and understand the amount of electric current usually transmitted over the different kinds of wires and their dangerous character, the purposes for which the different wires were used, when they were in their proper positions and the danger to be encountered in working among them.

Prior to the accident he had frequently been upon this particular telephone pole, but had not been in that vicinity for a number of days, and had no previous knowledge of the displacement of defendant's wires. On the morning of the 8th of August, plaintiff was sent to this vicinity by his employer to locate and remedy some defect in its telephone wires. He approached the vicinity, coming from the east on the south side of Russell street, scanning the telephone wires at the top of the poles on the north side of the street to locate the trouble. He discovered two wires crossed between the pole he afterwards climbed and the one east of it. He then crossed to the north side of the street, passing under defendant's trolley wires, in the neighborhood of the displaced circuit breaker, went to the telephone pole, and ascended it from the north side thereof. This pole is about 15 inches in diameter at the base and tapers somewhat towards the top, and while plaintiff was climbing, it was between him and the trolley service wire and the displaced circuit breaker, so that his view thereof was obstructed. When he reached the iron peg on which defendant's wire rested and grasped it with his hand, he observed that the wire around the pole was in contact with the peg, and it then appeared to him to be in its usual place. Upon reaching for the next peg above, his arm came in contact with the signal wire just below it, thus forming a circuit and causing him to receive an electric shock, which occasioned the injury complained of in this action. The motion for a nonsuit is upon two grounds: (1) That plaintiff had not shown any negligence on the part of the defendant; and (2) that the proof showed that plaintiff was guilty of contributory negligence. The motion was sustained by the trial court upon the latter ground; but both are insisted upon here.

1. The defendant, employing in its business an agency so deadly and dangerous as electricity, is held to exercise the utmost degree of care in the construction, mainte-

nance, inspection and repair of it wires, so as to keep them harmless at places where persons are liable to come in contact with them. *Perham* v. *Portland Electric Co.,* 33 Or. 451 (53 Pac. 14, 24: 40 L. R. A. 799: 72 Am. St. Rep. 730). Its duty was not in any respect lessened with respect to the servants of the Pacific States Telephone Company, because, by reason of some agreement or license, it was permitted to attach its wires to a pole belonging to the telephone company.

2. Where two corporations are making a joint use of a structure to which the wires of each are attached, each should be under the same obligation to the other, as persons having common rights in a place or passageway are to one another, not negligently to place a dangerous substance on the common territory where it may be reasonably anticipated that others having common rights may be injured. The purpose for which the structures are used render some danger from electrical currents inevitable; but the danger ought to be made as small as is practicable by the exercise of reasonable care. *Illingsworth* v. *Boston Electric Light Co.,* 161 Mass. 583 (37 N. E. 778: 25 L. R. A. 552).

3. The evidence is positive and direct that for a period of a day and a half or two days the circuit breaker had been in the displaced condition which caused the unfortunate contact of the trolley wire with the wire attached to the pole and iron peg. However it may have been caused, the continuance of such conditions for that period of time would of itself constitute actionable negligence on the part of defendant.

4. If the derangement of the wires was caused without the negligence of the defendant, it was entitled only to a reasonable time after the condition arose in which to discover and remove the dangerous wire. *Chaperon* v. *Electric Co.,* 41 Or. 39, 40 (67 Pac. 928).

5. It is shown that defendant was continuously using these tracks, its cars passing along at brief periods of

time, and, being under the duty of a continuous inspection (Thompson, Negligence, § 802), and the displacement open to the view of its servants, there was sufficient to go to the jury upon that feature of the case.

6. There is evidence, however, that the displacement was by the defendant's servants. One witness testifies that two or three days prior to the accident, two men, whom the witness took to be defendant's men, came along and raised the trolley wires that go up and down Russell street, and that before they were raised they were quite low. It is also shown that the two upright wires from the trolley wire to the feed wire had been cut and were hanging down. It is not to be inferred that these wires were cut by a trespasser; but, in the absence of proof, the legitimate inference is that it was done by some one on behalf of the defendant, for the purpose of rearranging the position of its wires.

7. On this feature of the case, we are of the opinion that there was sufficient evidence of defendant's negligence to go to the jury.

8. In this State the burden of proving contributory negligence is upon the defendant, and the plaintiff is not required to show that he was free from negligence.

9. If it appears, however, from the proof offered to establish the defendant's negligence, that he himself was also guilty of negligence, without which the injury would not have occurred, such proof will defeat his recovery. *Grant v. Baker,* 12 Or. 329 (7 Pac. 318) ; *Scott* v. *O. R. & N. Co.* 14 Or. 211 (13 Pac. 98) ; *Tucker* v. *Northern Terminal Co.,* 41 Or. 82 (68 Pac. 426).

10. Defendant's counsel contends, in support of this portion of his motion: That it was plaintiff's duty to exercise his thinking faculties and his sense of sight in discovering and avoiding danger; that, taking into consideration his experience, his knowledge of the conditions and dangerous character of the work in which he was engaged, it should be said, as a matter of law, that

his injury resulted from his own want of care in failing to observe the position and condition of the trolley service wire and the circuit breaker which was open, visible, and plainly observable to one in the exercise of ordinary care or precaution. Plaintiff knew the location and purpose of all the wires attached to the pole, including the defendant's trolley service wire; but he also knew that this wire consisted of two parts, namely, the insulated portion south of the circuit breaker and the uninsulated portion north of it, which was wrapped around the pole and the iron climbing peg. He was familiar with the proper location and normal position of the circuit breaker, and what it was for, and realized, as he testified, that if, for any reason, it failed to work properly, or was out of order, the wire attached to the pole would be charged with electricity and be dangerous, and, had he known the condition the wires were in, he would not have ascended the pole. Plaintiff was not a servant of defendant and no contractual relation existed between them. Hence the doctrine of assumption of risk, as distinguished from contributory negligence—that is to say, from the failure of the plaintiff to exercise ordinary care to avoid injury—does not apply in this case, unless he knew and appreciated the danger and voluntarily put himself in the way of it. 1 Thompson, Negligence § 184.

11. He can be charged with contributory negligence if he knew, or should have known, that defendant's wire, which supported the trolley service wire, was charged with a dangerous current of electricity, and then voluntarily exposed himself to the risk of being shocked thereby. He testifies that he did not know; but it is contended there are some circumstances surrounding the case that might indicate a possibility that he may have known, such as that it was a bright day, that the circuit breaker was made of white material and could be easily seen by a person on the sidewalk opposite thereto, if he

happened to look in that direction, and that, before the accident, when plaintiff was on the south side of the street looking for the interference among the telephone wires his line of vision was necessarily in proximity to the displaced circuit breaker.

12. Contributory negligence will not in all cases, however, be imputed, as a matter of law, to a person who receives an injury from a danger, simply from the fact that it might have been seen, because the nature of his duties, or the surrounding circumstances, may be such as to distract his attention to other objects. 1 Thompson, Neg., § 189; *Webb* v. *Heintz,* 52 Or. 444 (97 Pac. 753).

13. Under the circumstances, the question is for the jury, and not for the court. *Illingsworth* v. *Boston Electric Light Co.,* 161 Mass. 583 (37 N. E. 778: 25 L. R. A. 552); *Mahan* v. *Newton & Boston Street Ry. Co.,* 189 Mass. 1 (75 N. E. 59); *Reagan* v. *Boston Electric Light Co.,* 167 Mass. 406 (45 N. E. 743); *Commonwealth Electric Co.* v. *Rose,* 214 Ill. 545 (73 N. E. 780); *Knowlton* v. *Light Co.,* 117 Iowa 451 (90 N. W. 818); *Paine* v. *Electric Illuminating Co.,* 64 App. Div. 477 (72 N. Y. Supp. 279); *Stevens* v. *Company,* 73 N. H. 159 (60 Atl. 848: 70 L. R. A. 119).

14. Plaintiff came to the *locus in quo* in the performance of his duties; that is, scanning the telephone wires on the north side of Russell street, which were east of and far above the level of defendant's trolley service wire. When he stopped on the south side of the street, he was east of the service wire, and the interference in the telephone wires, which he had discovered was still east of his then position, so that it does not necessarily appear that the displaced circuit breaker was, at any time, directly in his line of vision, for it would appear that he was looking away from it rather than towards it. As he climbed the pole, his eye naturally would not follow the stretch of the galvanized wire out to the circuit

breaker, because of the intervening pole. He would naturally be looking up at the steps which he must successively grasp to raise himself, and he testifies that he could not have seen the service wire unless he had stopped and looked around the pole, which he says he did not do, but that he was looking over at the pole next east of him, in which direction he had located the trouble. So far as the direct testimony of the plaintiff goes, it tends to show that he was ignorant of the displacement of the circuit breaker and of the resulting electric current in the galvanized wire wound around the pole and the iron peg with which he was in contact. We cannot say that his ignorance of that fact was negligence. He was where he had a right to be, and had the unrestricted right to the use of the iron peg. We think he also had a right to assume that the wire was harmless, because that involves only the assumption that defendant had fully performed the duty that the law imposes upon it. The wire was not intended to carry a current of electricity, as its very appearance manifested, and, if there was any possibility of its becoming so charged, there was no duty thereby imposed upon plaintiff to inspect or search for a defect in defendant's wires; but the latter owed the former the special duty of guarding him against danger from that wire, and he had the right to assume that defendant had performed that duty. *Perham* v. *Portland Electric Co.*, 33 Or. 451 (53 Pac. 14, 24: 40 L. R. A. 799: 72 Am. St. Rep. 730) ; *Bergin* v. *Southern New Eng. Tel. Co.*, 70 Conn. 54 (38 Atl. 888: 39 L. R. A. 192).

15. Can it be said, then, as a matter of law, that the misplaced circuit breaker was so conspicuous, and in such proximity to the plaintiff when so engaged in the line of his duty that, under the surrounding circumstances, he must have observed it, notwithstanding his statement that he did not see it, for a thing may be so obtrusive that a person could not avoid seeing it without shutting

his eyes or averting his head; but that is not the condition here. It is quite reasonable and probable that plaintiff's attention was so engaged in the search for the trouble in the telephone wires, and his immediate work in respect thereto, that he took no note of the dangerous condition of defendant's wires; the point or origin of the danger being distant perhaps at least thirty or forty feet from him at the time of the accident. In the performance of his work he was not obliged to come within immediate contact of any part of defendant's wires where they were displaced, so as to unavoidably impart a notice or warning, nor did he unnecessarily, or at all, touch them or interfere with them; and it cannot be said, under such circumstances, as must be said to sustain a nonsuit, that there is a necessary inference from the evidence, measured by the ordinary and uniform experience of men, that plaintiff saw the condition of defendant's wires before the accident. The rule by which such a conclusion is to be reached is well stated by Mr. Justice WALKER, in *Stevens* v. *Company*, 73 N. H. 159, 163 (60 Atl. 848, 850: 70 L. R. A. 119):

"When this defense (contributory negligence) is urged as a ground for a nonsuit or for a verdict for the defendant, as it is in this case, it must appear that reasonable men, acting as the triers of the fact, would find, without any reasonable probability of differing in their views, either that the plaintiff knew and appreciated the danger, or that ordinarily prudent men under the same circumstances would readily acquire such knowledge and appreciation. The fact of actual or constructive knowledge on the part of the plaintiff must appear, either directly or by necessary inference from the evidence and the uniform experience of men, before the court can order a nonsuit or direct a verdict upon this ground; and this result must follow after the evidence has received a construction most favorable to the plaintiff. *Hardy* v. *Railroad*, 68 N. H. 523, 536 (41 Atl. 179)."

And Mr. Justice Moore, in *Jonston* v. *Oregon S. L. Co.,*
23 Or. 94, 105 (31 Pac. 283, 286) has thus defined an
obvious risk:

"An open visible risk is such an one as would in an
instant appeal to the senses of an intelligent person.
Wood, Mas. & Ser. 763. It is one so patent that it would be
instantly recognized by a person familiar with the busi-
ness. It is a risk about which there can be no difference
of opinion in the minds of intelligent persons accustomed
to the service. It is not expected that the servant will
make close scrutiny into all the details of the instrument-
alities with which he deals. His employment forbids
that he should thus spend his time. If the rule were
otherwise, the management of a great railway system
would be needlessly slow. The servant is expected to
observe such objects only, in the absence of notice, as
would in an instant convince him of their danger."

The case of *Bergin* v. *Tel. Co.,* 70 Conn. 54. (38 Atl. 888:
39 L. R. A. 192) cited by defendant, is readily distin-
guished from the present case. Bergin had been expressly
warned a day or two before the accident, of which he
complained, that the particular guy wire of the electric
railroad company, which caused the injury, was charged
with electricity, and; notwithstanding the warning, he
carelessly allowed a wire which he was holding to come
in contact with the dangerous guy wire. *Law* v. *Central
Dist. Printing & Telegraph Co.,* (C. C.) 140 Fed. 558,
is a case where a servant has sued a master, and the point
involved is contributory negligence. The cause of the
accident was a displaced electric light wire coming in
contact with a guy wire. Plaintiff was in the act of
climbing the pole to which both wires were or had been
attached. It was taken as an established fact that the
contact of the electric wire with the guy wire was not
observable from the ground, nor that the insulation was
gone, nor was there any particular warning in the cir-
cumstance shown by the evidence that the bracket to

which the electric wire had been attached was vacant; but the court said: "Whatever allowance is to be made for these things, they disappear after the plaintiff had climbed the pole and had the situation immediately before him. Had he taken pains to look, he would not have failed to have seen, what must have been within a foot of his eyes, that the electric light wire, which was plainly disinguishable by its size, was down against the pole in contact with the guy wire, which it thereby of necessity charged with its high tension current; and yet, notwithstanding this, he reached out and took hold of the guy wire to help himself up onto the cable, with the unfortunate result which followed." *Anderson* v. *Inland Tel. Co.,* 19 Wash. 575 (53 Pac. 657: 41 L. R. A. 410) also cited by defendant, is a case somewhat similar in facts to the present case. The plaintiff had sued both his employer, the telephone company, and the street railway company, but dismissed as to the latter, and his right to recover was left to depend upon the rights and duties arising from the relationship of master and servant, which differentiates the case from the one in hand. Other cases cited by defendant are of the same character and are not applicable here.

We are of the opinion that the court erred in ordering a nonsuit, and the judgment is therefore reversed, and the cause remanded for a new trial.     REVERSED.