[No. 13657.   Department Two. — February 3, 1891.]

WILLIAM FINCH, APPELLANT, v. THE RIVERSIDE AND ARLINGTON RAILWAY COMPANY, RE-SPONDENT.

EMINENT DOMAIN — COMPENSATION — USE OF STREETS — DEDICATION — STREET-RAILWAY. — The dedication of a street to public use authorizes any ordinary use for street purposes; and the use of a street for the tracks of a street-car company is of this class, and may be authorized by the city authorities, without compensation to the owner of the fee of the street.

STREET-CAR COMPANY — POSITION OF TRACK — FRANCHISE — EJECTMENT. — The tracks of a street-car company should be laid as nearly as practicable in the middle of the street. If the franchise does not indicate the precise position of the track, and it is not as nearly as practicable to the middle of the street, the track is an unauthorized obstruction, and the owner of the fee of the street may maintain ejectment against the company.

ID. — PUBLIC CONVENIENCE. — The mere fact that it is more convenient to the traveling public to have the track on the side of the street, and that it obstructs travel a little less than it would do in the center of the street, is not a sufficient reason for not complying with the law.

TRUSTEE — MUNICIPAL CORPORATION — INTEREST — FRANCHISE. — When an application for a franchise was referred to a committee of two, and upon their favorable report the franchise was granted, the fact that one of the committee was a subscriber to the stock of the company for whose benefit the franchise was granted renders the franchise void.

ID. — CORPORATION. — It makes no difference that the corporation for whose benefit the franchise was granted was not yet formed; it is sufficient that the franchise was granted to a committee of subscribers for the benefit of the corporation.

PRESUMPTION — IDENTITY. — Identity of persons is presumed from identity of name.   Instance.

APPEAL from an order of the Superior Court of San Bernardino County refusing a new trial.

The facts are stated in the opinion.

*H. C. Rolfe,* for Appellant.

The fact that one of the city trustees was interested in the corporation defendant invalidated the grant of the franchise. (*San Diego* v. *San Diego etc. R. R. Co.*, 44 Cal. 106; *Pickett* v. *School District*, 25 Wis. 552; 3 Am.

Rep. 105; *Cumberland Coal Co.* v. *Sherman,* 30 Barb. 553; *Aberdeen R'y Co.* v. *Blakie,* 1 Macq. 461; *Rubidoex* v. *Parks,* 48 Cal. 215.)

*W. J. McIntyre,* for Respondent.

HAYNE, C. — This was an action of ejectment brought by the owner of the fee of one half of a street in the city of Riverside, called Cypress Avenue, against a street-car company, which was alleged to be using such half of the street in an unauthorized and unlawful manner. The trial court gave judgment for the defendant, and the plaintiff appeals.

There is no dispute about the plaintiff's ownership of the fee of half of the street, nor about the existence of the street, and the consequent right of the public to use it as a highway. The question litigated is, whether the defendant's use of it was unauthorized and unlawful. In this regard several points are made.

1. It is contended that the defendant could not use the street for the purposes of its track without first making compensation to the plaintiff, and the case of *Weyl* v. *Sonoma Valley R. R. Co.,* 69 Cal. 203, is cited. But this case was not in relation to a street-railway, but to an ordinary railroad whose route took it through a street. And we think that there is a difference between such a case and the present. The dedication of a street to public use authorizes any ordinary use for street purposes; and the use of a street in a city or town for the tracks of a street-car company is of this class, and is therefore authorized.

2. It is argued that the track was not located as required by law. The provision of the statute in relation to the subject is, that "the city or town authorities, in granting the right of way to street-railroad corporations, in addition to the restrictions which they are authorized to impose, must require a *strict* compliance with the following conditions: . . . . 1. To construct their track on

those portions of the street designated in the ordinance granting the right, which must be *as nearly as possible* in the middle of the street." (Civ. Code, sec. 498.)

The order granting the franchise did not prescribe the precise part of the street upon which the track was to be located. It was merely that the franchise be granted to the applicants " according to their application "; and while the application named the streets through which the road was to run, it did not refer to any particular portion of any street. There was, however, a general ordinance applicable to all street-car companies, providing that " the track shall be laid as near the center of the street or streets along the route of the railway *as practicable.*"

It will be observed that the effect of this was, that the board did not exercise its own judgment as to the portion of the street to be occupied by the track, but left it to the company to construct their track as near the middle of the street as " practicable."

The company evidently did not consider it practicable to place the track in the middle of the street, and accordingly placed it on the side next the plaintiff's lot. The precise location is not shown by the record; but the court finds that "*it was not practicable* to locate the track in the middle of Cypress Avenue." The court further finds that the franchise provided that the track was to be laid "along the eastern side of Cypress Avenue" (which, as above shown, it did not provide); and that "the location of the defendants' track was in conformity with the requirements of said franchise."

The plaintiff's position is, in the first place, that the words "as nearly as possible" do not mean " as nearly as practicable," as held by the trial court; and that even if they do, the finding that it was not practicable to locate the track in the middle of the street is not sustained by the evidence.

In relation to the first question, we think that the

statute means "as nearly as practicable." As a matter of course, it is always physically possible to place a track in the middle of a street. It may not be legally possible. For example, there may already be a track there under a franchise which it is beyond the power of the board to revoke. But even if a track were placed in the middle of the street under a revocable license, we think that the board would have power to authorize the laying of another track so as not to interfere with the first. So if, as is sometimes the case in rural towns, a row of trees were in the middle of the street, the track could be placed on one side. And we are not prepared to say that the conditions of traffic might not be such as to require a similar location. The use of the words "as nearly" in connection with "as possible" shows that it was foreseen that a location in the middle of the street could not always be made; and we think that from the nature of the case, the meaning must be that the location must be controlled in some degree by the circumstances of the particular case.

But we do not think that the evidence in the case before us shows any reason why the track could not be located in the middle of the street. Only two witnesses testified on the subject. One of them said, in substance, that it was "impractical" to place such a track in the middle of such a narrow street (it was forty feet wide), because it would interfere with traffic. To use his own language: "It is impractical to put it in the center of such a narrow street, because it interferes *a little bit* with the travel, just about the same as when Mr. Finch goes across to his lot 210. It interferes with the travel in passing teams. If the travel is very great, it interferes materially. It depend on how much travel there is." But the witness did not state how much travel there was.

The other witness said that a track in the middle of a street would interfere with traffic "very extensively." But he went on to say: "Putting a street-railway in

such a street would interfere with the use of the street for other travel, *wherever you put it.* But I should deem it *advisable* not to put any street-railway in the center of such a narrow street, for the reason that it will obstruct the travel to such extent that teams, for instance, cannot pass each other on either side of the track without crossing the track. There would be room on each side for teams to pass. . . . . *Of course it is practicable.*"

The effect of this testimony is merely that in the opinion of the witnesses the requirement of the law is wrong; and that it is more convenient to the traveling public to have the track on the side of the street. But the law certainly means more than this. It is an injustice to the property owners on one side of the street to have the obstruction placed close to their doors. And for this, among other reasons, the law requires that it must be placed as near the middle of the street as practicable, and enjoins a "*strict* compliance" with the requirement.

3. It is contended that the franchise is void because a subscriber to the stock of the company was a member of the board of city trustees, and took an active part in the proceedings in relation to the franchise; and we think that this position must be sustained.

It appears that when the application for the franchise was made, a number of protests were put in, and the matter was referred to a committee of two, of which E. W. Holmes was one. This committee made a report in writing, recommending that the application be granted. The report was adopted, and the franchise granted at the next meeting. Several months prior to this, an agreement to subscribe to the capital stock of a street-car company, to be formed on lines similar to those of the defendant, was gotten up, and by it E. W. Holmes subscribed for two hundred shares of stock. A committee of subscribers was appointed to apply for a franchise. The *personnel* of this committee was subsequently changed to some extent. The application was made by

the committee, and was granted, on the favorable report of the committee of two, of which Holmes was a member, as above stated. Subsequently the committee made a deed of the franchise to the company.

It is true that there was no testimony to show that E. W. Holmes, the city trustee, was the same person as E. W. Holmes, the subscriber. But in the absence of evidence to the contrary, identity of person will be presumed from identity of name. It is also true that no corporation was formed at the time of the subscription, and that the franchise was granted to several individuals, and not to a company. But, as above shown, the individuals constituted a committee of the subscribers appointed for the purpose of applying for the franchise, and after they obtained it, they transferred it to the company formed in pursuance of the subscription.

We think that it sufficiently appears that the franchise was granted for the benefit of a corporation to be organized by a number of subscribers, of whom the city trustee was one, and was subsequently transferred to the corporation; and taking this to be the fact, the case falls within the principle of *San Diego* v. *San Diego etc. R. R. Co.*, 44 Cal. 106. The trustee was one of a committee of two to whom the application was referred, and the favorable report of this committee, which was adopted by the board, must have influenced its action. In our opinion, this vitiated the franchise.

For the above reasons, we think that the defendant was a mere intruder upon the street, and under the case of *Weyl* v. *Sonoma Valley R. R. Co.*, 69 Cal. 203, the plaintiff can maintain ejectment against it.

We therefore advise that the order appealed from be reversed, and the cause remanded for a new trial.

Vanclief, C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the order appealed from is reversed, and the cause remanded for a new trial.