JACKSONVILLE ICE & ELECTRIC COMPANY v. MINNIE L. MOSES ET AL.

Decided January 5, 1911.

1.—Electric Wires—Degree of Care Required.

An electric light company lawfully erecting over a public highway wires carrying a current sufficient to destroy life must employ such means to guard against injuring those using the highway as the dangerous nature of its agency renders prudent, the care required being proportionate to the danger to be avoided.

2.—Same—Charge—Lightning.

A charge properly defining the degree of care required in general of an electric light company in erecting, maintaining and inspecting its wires, is not erroneous as applied to a case in which the defense was presented that the fall of the wire and consequent death of one coming in contact with it on the highway was due to a stroke of lightning. It was the duty of the defendant to guard, so far as was reasonably practicable, against ordinary and usual weather conditions.

3.—Same—Duty of Inspection—Knowledge of Conditions.

A charge which required of the electric company the duty of inspection of its wires, and held it taxable with such knowledge as due inspection would give was not erroneous, as assuming such duty to be continuous, the case being one of a wire falling at night in an electrical storm, with wind and lightning. The atmospheric disturbances were notice of the liability of the wires to be down, and of the necessity for examination of the appliances installed in the power plant to indicate when such condition had occurred.

4.—Contributory Negligence—Charge.

The court having charged generally upon the issue of contributory negligence, defendant was entitled, on request, to an affirmative presentation of that defense; but only so on presenting a correct charge on the subject. Charge considered and held properly refused because on the weight of evidence.

5.—Same—Insufficient Evidence.

Deceased was going to his home in an omnibus, late at night, and during a thunderstorm. One of the horses fell down in the street and both were struggling in the dark. The driver left his team to get a light, telling deceased to remain in the omnibus. On his return the team and vehicle were gone, and the passenger lying in the road killed, apparently by contact with a charged electric light wire which had fallen across the street. Held that the act of defendant in leaving the omnibus and attempting to walk to his home nearby under these circumstances was rather an act of prudence than of contributory negligence, and the submission of that issue was not called for by the proof.

6.—Same—Presumption.

Contributory negligence will not be presumed, but, like negligence in general, must be proven, the jury not being permitted to indulge in pure speculation and conjecture as to facts.

**7.—Charge—Absence of Evidence—Ignoring Issue.**

Requested charges held properly refused, as submitting facts on which there was no evidence, as ignoring issues raised by the evidence, and as being on the weight of evidence.

**8.—Requested Charges.**

Where the charge given failed to present a material issue, requested instructions, though incorrectly framed, may suffice to call attention to the omission and require the court to charge upon it; but it is otherwise as to a mere request for fuller instruction on a point submitted. The court is not required to revise and correct, but may refuse such a charge if incorrect.

**9.—Same.**

The failure to present negatively also an instruction which was submitted in affirmative form, is mere omission, not constituting error in the absence of a requested charge supplying the defect.

**10.—Evidence—Subsequent Condition.**

Evidence as to defective insulation of electric wires, observed four days after an accident occurred at the place, was not inadmissible, in the absence of proof that the conditions had changed in the meantime.

**11.—Evidence—Harmless Error.**

The admission, in an action against a corporation for death caused by its negligence, of evidence as to the amount of the capital of defendant, though this was irrelevant, is held not ground for reversal, no injury to defendant by its admission being made to appear.

**12.—Death—Negligence of Servant—Corporation—Personal Duty of Master.**

Duties which are personal to the corporation, an electric company charged with the duty of proper maintenance and inspection of its wires in the highways, for the protection of the public from danger, can not be so delegated to its servant as to relieve it from liability for the latter's neglect in their performance, though it was not liable, under the statute, for death caused by mere negligence of the servant (Rev. Stats., art. 3017, par. 2).

**13.—Same—Case Stated.**

An electric company maintaining over a highway wires carrying a current capable of causing death, provided in its power house a mechanism showing, by inspection there, when any of such wires had fallen. A traveler in the street, at night and during a storm, was killed by contact with a fallen wire. Held that the duty of inspection was a personal one of the corporation. It was not relieved by having installed such device and committed the timely inspection of it to an employe. The duty to make such inspection of the device, from time to time, during an electrical storm, as was requisite to that use of proper care, was a non-delegable one, and the corporation was liable for injury resulting.

**14.—Electric Wires—Unauthorized Use of Highway.**

An electric light company which maintained wires dangerously charged over a public highway without permission from the proper public authorities to do so was liable for the death of a traveler thereon by contact with such wire fallen at night across the road, irrespective of negligence by it in the erection, maintaining, or inspection of its wires. It was an unlawful obstruction of the highway.

Appeal from the District Court of Cherokee County. Tried below before James P. Gibson, Esq., Special Judge.

Vol. LXIII Civil-32.

*Donley & Guinn, John M. King, N. B. Morris* and *H. I. Myers,* for appellant.—Such a charge, under the peculiar facts of this case, was and is upon the weight of the evidence, and damaging to appellant. Rev. Stats., art. 1317; Railway Co. v. Kutac, 76 Texas, 476; Railway Co. v. Shieder, 88 Texas, 166; Davis v. Railway Co., 42 Texas Civ. App., 55; Railway Co. v. Jazo, 25 S. W., 714.

The charge instructs the jury that as a presumption of law the defendant would have knowledge of the condition of its wires. Heldt v. Webster, 60 Texas, 207; Buring v. Bank, 69 Texas, 602; Railway Co. v. Robinson, 73 Texas, 286.

The undisputed evidence shows that appellant is a private corporation, and that the injuries sustained by deceased for which this suit was brought resulted in his death, and the charge of the court is erroneous in that it makes the appellant liable for the negligent acts of its servants or employees which caused said death. Rev. Stats., art. 3017; Hendricks v. Walton, 69 Texas, 192; Fleming v. Loan Agency, 87 Texas, 238; Cole v. Parker, 27 Texas Civ. App., 563; Williams v. N. T. Co., 107 S. W., 125; Telephone Co. v. Thomas, 45 Texas Civ. App., 20; Burns v. Oil Co., 26 Texas Civ. App., 223; Railway Co. v. Lipscomb, 62 S. W., 954.

There was evidence tending to show that the break in appellan*'*s wire was occasioned by its being struck by lightning, and it was error for the court in effect to charge the jury that the defendant would not be negligent and liable for damages for failure to provide for extraordinary lightning, such as would not have been reasonably foreseen by a person of ordinary skill and foresight. Jones v. Pitcher, 24 Am. Dec., 716; Polack v. Pioche, 95 Am. Dec., 115; Central Line of Boats v. Lowe, 50 Ga., 509; Renfro v. Hall, 3 Metc. (Ky.), 51; Fergusson v. Brent, 71 Am. Dec., 582; Gilmore v. Corman, 40 Am. Dec., 96; Steamboat T. Co. v. Tiers, 64 Am. Dec., 394; Mewitt v. Earle, 86 Am. Dec., 292.

The issue presented by appellant's special charge No. 3 was raised in the case, and the court having failed to present this issue in a full, positive and affirmative manner in its main charge, it was error for the court to refuse to give the special charge requested. Y. P. Oil Co. v. Noble, 101 Texas, 125; Railway Co. v. McGlamory, 89 Texas, 635; T. & P. Ry. Co. v. Hubert, 95 S. W., 569; I. & G. N. Ry. Co. v. Brice, 100 Texas, 203; Railway Co. v. Jackson, 88 S. W., 406; Railway Co. v. Sisson, 88 S. W., 371.

The court's attention having been called to the issues presented by defendant in special charge No. 3, it was the duty of the court to correctly charge the jury on the issues therein presented even though it correctly refused the special charge requested by the defendant because of errors contained therein (if any). Kirby v. Estill, 75 Texas, 487; Railway Co. v. Hodges, 76 Texas, 93; Freybe v. Tierman, 76 Texas, 291; Railway Co. v. Mangham, 29 Texas Civ. App., 486; Railway Co. v. Hoard, 48 S. W., 149; Railway Co. v. Harkan, 45 S. W., 391.

The witness was testifying as to the condition of the wires several

days after the accident, and the evidence was therefore inadmissible and prejudicial to appellant. Railway Co. v. Hennessy, 74 Texas, 151; Ware v. Shafer, 27 S. W., 765; Erickson v. Barber, 49 N. W., 838.

The capital of appellant was not in issue, and it was evidently the purpose of this testimony to influence the jury in fixing the amount of their verdict if they should return one against appellant. Railway Co. v. Hanning, 91 Texas, 349; Railway Co. v. Harrington, 62 Texas, 597; Railway Co. v. Lyde, 57 Texas, 505.

*John C. Box* and *P. O. Watkins,* for appellees.—The duty of appellant to ascertain the breaking and falling of one of its live wires and in keeping same out of a public street was an absolute or personal duty owed by the corporation incident to its ownership and was non-assignable. Citizens Tel. Co. v. Thomas, 45 Texas Civ. App., 20; San Antonio Gas & Elec. Co. v. Badders, 46 Texas Civ. App., 559; Standard L. & P. Co. v. Muncey, 76 S. W., 931; Shippers Comp. & W. Co. v. Davidson, 35 Texas Civ. App., 558; Joyce on Electric Law, secs. 438, 438a, 438b, 445, 450, 454.

If the wire was broken by an ordinary rain or wind storm, or lightning, such as usually occur in the vicinity where the accident happened, it was not error for the court to instruct the jury to find for the defendant, if they believed from the testimony that such rain or wind storm, or lightning, was ordinary and usual, and that the falling of said wire due to any or all of said causes could have been reasonably foreseen and prevented by the exercise of ordinary foresight, skill and care. Gulf, C. & S. F. Ry. Co. v. Boyce, 39 Texas Civ. App., 195; Booker v. Southwestern R. R. Co., 128 S. W., 1017; Southwestern Tel. & Tel. Co. v. Morris, 106 S. W., 427; Couts v. Neer, 70 Texas, 469; Southwestern Tel. & Tel. Co. v. Abeles, 126 S. W., 725; 1 Cyc., 758; 1 A. & E. Enc. (old edition), 173-177; 1 Joyce on Electricity, 745, sec. 445b, also pp. 450-452.

HODGES, ASSOCIATE JUSTICE.—The appellees are the widow and minor children of S. H. Moses, who was killed in September, 1909, by coming in contact with one of appellant's wires charged with a current of electricity. This suit was instituted by them to recover damages sustained on account of his death. The facts, about which there seems to be no controversy, show that the deceased lived with his family in the suburbs of the town of Jacksonville, Cherokee County, and was employed as a boilermaker, or repairer, by the Texas & New Orleans Railway Company, which maintained a depot at that place. On the night Moses met his death he was going from some point near the Texas & New Orleans depot to his residence, about a mile and a quarter distant, and on the north side of the town. He was traveling in what the witnesses call "the bus, or transfer," presumably the character of vehicle usually employed in conveying passengers to and from railway depots. The time is placed at about 2:30 a. m., and the night is described as being very dark. A rain had fallen and the ground was

wet. Some of the witnesses say there had been earlier in the night a rather hard rain, accompanied by some wind and considerable lightning, but the testimony does not indicate that it was a storm of any unusual severity. When the bus reached the point on what is designated in the record as Kickapoo Street, where the latter was crossed by appellant's line of electric light wires, one of the horses fell to the ground and could not be made to proceed. Not knowing the cause of the trouble, the driver, who was seated on the outside of the vehicle, told the deceased to remain on the inside while he went to procure a light. When the driver returned he found that his team had gone, and one of appellant's wires was broken and was lying in the street, and also discovered the dead body of Moses lying in such a position as to show that he had been killed by an electrical shock received from the fallen wire. Appellant's line at that place ran east and west. It seems that Kickapoo Street ran also in a westerly direction from the principal portion of the town until it reached a point near where the accident occurred. Here it deviated to the south for a short distance and turned again in a westerly course. Appellant's line of wires ran some distance from and parallel with the street on the south side, intersecting and crossing to the north side, making an oblique angle at the place where the street changed its course. It was at this point that Moses was killed by the fallen wire. On the east side of the street, and within a few feet of its edge, there stood a large red oak tree, through the branches of which the electric wires passed; and on the opposite, or west side, about one hundred yards distant, was the transformer used by the appellant on its wires. The petition charged the following acts of negligence: 1. The placing and maintaining of appellant's wires in close proximity to the limbs of the oak tree, and allowing them to come in contact with those limbs, thereby causing the wires to burn and break. 2. Permitting the wire, after it had broken and while charged with electricity, to remain in the street. 3. Failing to have its wires properly insulated. 4. Failing to have suitable appliances for detecting when a wire was grounded, or down. 5. That if it did have such appliances it failed to use proper diligence in inspecting them for the purpose of ascertaining whether or not any of its wires were down. Appellant answered by general denial, specially pleading that the wire was broken as the result of being struck by lightning during a severe storm prevailing at the time, and that the deceased was guilty of contributory negligence in getting out of the vehicle and coming in contact with the fallen wire. A trial before a jury resulted in a verdict and judgment in favor of the appellees for $10,000.

Counsel for appellant have presented nineteen assignments of error, complaining principally of the charge of the court and the refusal to give special charges. After defining negligence and contributory negligence, and as introductory to that which was to follow, the court instructed the jury as follows: "It was the duty of the defendant to exercise ordinary care in the erection of its wires so as not to permit

them to get into such position or condition as might reasonably have been foreseen to be dangerous to persons traveling in or upon the public road or street in or near which the wires were erected." "The defendant is presumed in law to have had such knowledge of the condition of its wires as it could have had by the exercise of that degree of care, prudence and diligence that an ordinarily prudent person would have used under the same or similar circumstances." It is claimed that while the principles here announced may not be incorrect as abstract legal propositions, yet under the peculiar facts of this case the charge was on the weight of the evidence. "The peculiar facts" relied on to distinguish this from those cases where such instructions might be appropriate consist of the facts pleaded as a special defense, that the wire was broken as the result of a stroke of lightning, and that when the deceased was injured the wire was down in the street, but that of this situation appellant had no actual knowledge. The legal effect of the first paragraph quoted above was to tell the jury that the appellant would be guilty of negligence if, in the erection of its wires, it failed to exercise ordinary care to guard against endangering the safety of those who traveled upon the highway. It is apparently assumed in urging this objection that it was not the duty of the appellant to exercise even ordinary care to protect its line against the consequences of lightning in any of its forms. The testimony shows that appellant was engaged in the business of operating an electric light plant; that its wires usually carried a current estimated at 2250 volts, and that this was sufficient to destroy life. It had thus constructed a dangerous agency over a public highway where people were in the habit of passing both during the day and the night. In erecting its wires, and in maintaining them afterwards, it was the duty of the appellant to employ such means and to take such precautions to guard against injuring those using the highway as the dangerous nature of its agency would render reasonably necessary and prudent. Citizens Tel. Co. v. Thomas, 45 Texas Civ. App., 20, 99 S. W., 879; San Antonio Gas & Elec. Co. v. Badders, 46 Texas Civ. App., 559, 103 S. W., 229; Lewis v. B. G. Gas Light Co., 135 Ky., 611, 117 S. W., 278; Day v. Con. L. & P. Co., 136 Mo. App., 274, 117 S. W., 81; Brown v. Con. L. & P. Co., 109 S. W., 1032; Byerly v. Con. L. & P. Co., 130 Mo. App., 593, 109 S. W., 1066; Gentzcow v. Portland Ry. Co., 54 Ore., 114, 102 Pac., 614; Elliott on Roads and Streets, secs. 821-822; 2 Cooley on Torts, pp. 1492-1494; 1 Thompson on Neg., secs. 802-803. In some jurisdictions it is said that this duty demands the exercise of the utmost care, and in no instance has it ever been held that it is less than a person of ordinary prudence would use under the same, or similar circumstances. The care exacted under any circumstances is proportionate to the danger to be avoided; the greater the hazard the greater the care required. Galveston City Ry. Co. v. Hewitt, 67 Texas, 473, 60 Am. Rep., 32, 3 S. W., 705; Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Texas, 393, 43 S. W., 877; 1 Thompson on Neg., secs. 25, 26. Appellant had no natural right to encroach upon the street with its wires. If it was

rightfully there, it must have been by permission of the proper authorities. Assuming, however, that it had acquired the legal right to erect and maintain its wires across this public road, or street, the implied condition upon which the grant is made is that the grantee will use proper care in the construction of its line and in keeping it in a condition so as not to injure those whose business brings them within its reach. Western U. Tel. Co. v. Nelson, 82 Md., 293, 31 L. R. A., 572. While electric light companies are not expected to build their lines so as to stand extraordinary and unusual weather conditions, they are expected to guard, so far as may be reasonably practicable, against ordinary and usual conditions. And while they may not be able to construct their lines and fix their wires so that they will withstand extraordinary atmospheric electrical currents, it is certainly their duty to use ordinary care to guard against those which are ordinary and usual. We do not think the charge was improper. The court left it for the jury to say whether or not appellant had conformed to the standard of duty required. Citizens' Tel. Co. v. Thomas, 45 Texas Civ. App., 20, 99 S. W., 883; Roche v. Dale, 43 Texas Civ. App., 287, 95 S. W., 1100; San Antonio & A. P. Ry. Co. v. Vaughn, 5 Texas Civ. App., 195, 23 S. W., 748. The evidence relied upon as showing that the wire was struck by lightning is very unsatisfactory. It consisted mainly of the testimony of one of appellant's witnesses, who gave it as his opinion, after an inspection of the ends of the broken wire, that the break was caused by lightning. He admitted, however, that the same appearances might have resulted from overloading the wire. The engineer who was in charge of the plant that night, and who says he frequently inspected the conditions in the powerhouse, testified, at the instance of the appellant, that no lightning struck the wires that night.

The second paragraph above complained of assumes that the duty of inspection was continuous, that the diligence of an ordinarily prudent person was the measure of that which was required of the appellant, and that the law would impute to it such knowledge of the condition of its wires as might have been acquired by the exercise of that degree of circumspection. A wire charged with a deadly current was lying across a public road where people were probably passing at all hours. The night was dark, and the danger could not be seen and avoided by those traveling that way. There had been a rain, accompanied by some wind and lightning. If these atmospheric disturbances were of the intensity claimed by the appellant, they were sufficient to put it upon notice that some of its wires were probably down, and prudence would have suggested an investigation. There was installed within the building used as appellant's powerhouse, where its machinery was situated, an appliance that indicated when a wire was down, or grounded. An inspection of this was an easy method of inspecting the line. Certainly it was the duty of appellant to exercise ordinary diligence to acquire information so accessible. If so, its failure would render it responsible for the legal consequences. Ignorance would be a sufficient excuse only where ignorance was itself excusable. Mitchell v.

Charleston, etc., Co., 45 S. C., 146, 31 L. R. A., 577; District of Columbia v. Woodbury, 136 U. S., 463, 34 L. Ed., 477; 1 Thompson on Neg., sec. 802.

The following special charge on contributory negligence was requested by appellant and refused: "Gentlemen of the Jury: You are instructed as a part of the law of this case, and you will be controlled by this charge in connection with the main charge of the court, that if you believe from the evidence that S. H. Moses was guilty of contributory negligence and such contributory negligence (if any he was guilty of) was the proximate cause of his death, the plaintiff can not, if you so believe, recover in this case. By contributory negligence is negligence not only on the part of the defendant company, but on the part of S. H. Moses who was guilty, and by which they both contributed to the injuries. If S. H. Moses, in getting out of the bus after he was told not to do so by Hopper, was, under the circumstances then surrounding him, negligent, and his act of getting out of said bus and going on the wire caused his injuries, and it was not his duty to get out of said bus, and if he had remained in said bus he would not have been hurt; and if you believe that his getting out of said bus as aforesaid contributed proximately to his death, then the plaintiff can not recover, although you may find the agents of the defendant were guilty of negligence in the matters and things charged in their petition, and if you so find you will return a verdict for the defendant." The court had in its general charge previously defined contributory negligence, and had also instructed the jury to find for appellant if they believed that Moses' death was the result of his own negligence. Without reference to whether the requested charge was a correct enunciation of the law as applicable to the facts, it occurs to us that had it been given in addition to what was said on that issue in the main charge there would have been too much emphasis placed upon the issue of contributory negligence, if that might be considered an issue in the case. Ball v. El Paso, 5 Texas Civ. App., 221, 23 S. W., 835. The first portion of the special charge was a substantial reiteration of a part of the general charge, to the effect that appellees could not recover if Moses had been guilty of contributory negligence in any respect, and also in giving a further definition of contributory negligence. Assuming, however, that contributory negligence was an issue made by the evidence, appellant undoubtedly had the right to have the facts relied on to establish that defense affirmatively presented to the jury; but the court having charged generally upon that issue, appellant could not complain of the failure to give more specific instructions without having prepared and requested a correct special charge covering the omission. It was not the duty of the court under such circumstances to reform one that was incorrect and then give it. Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 166, 30 S. W., 902; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 639, 35 S. W., 1058; St. Louis S. W. Ry. Co. v. Hall, 98 Texas, 480, 85 S. W., 786. The particular conduct of Moses which is referred to as constituting contributory negligence, and upon which it was sought to

have the jury pass, was in getting out of the vehicle when it was stopped by the driver at the time the animal fell. The wire was evidently lying on the ground in front of where the bus was stopped, presumably under where the horses stood. The door to the bus must have been either on the side or in the rear. It is obvious, therefore, that merely getting out of the bus into the street did not place Moses in contact with the wire, and could not have been the proximate cause of his death. In order to come in contact with the wire he must have gone in that direction. This he evidently did, but the special charge does not submit to the jury the question of negligence in going to where the wire was and coming in contact with it, but assumes that if he did this he was guilty of negligence. In this respect the charge was on the weight of the evidence. But without reference to the form of this requested charge, we think the refusal was justified by the fact that the issue of contributory negligence was not raised by the evidence. According to the testimony of Hopper, the driver, when he left the bus one of the horses was down struggling, "and the other was an awful fool and was cutting up." Being unable to discover the cause of the trouble on account of the intense darkness, Hopper dropped his lines and went off to procure a light, leaving the animals free to run off with the vehicle should the one that was down extricate himself. Moses lived only about 200 yards distant from where they stopped. Getting out of the closed bus under these circumstances was not only not a negligent act, but a prudent course to take. No witness was present or could tell of the situation when Moses did get out. It may have been that he waited until the horses started off, and got out to save himself from another possible injury. His coming in contact with the wire was, in all probability, purely accidental. The jury could not have found that he was negligent without indulging in pure speculation and conjecturing facts of which there was no evidence. Contributory negligence will not be presumed, but, like negligence in general, must be proved. Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451, 84 S. W., 1049; Suburban Elec. Co. v. Nugent, 58 N. J. L., 658, 32 L. R. A., 700; Wilson's Admx. v. Railway Co., 86 S. W., 691. We think the court correctly refused the requested charge.

Two other special charges were requested and refused. One (numbered 3) not only submitted as facts occurrences of which there was no evidence,—whether the wire was broken by the falling of a limb,—but authorized a finding for the appellant without reference to another issue made by the pleading and the testimony,—the failure of the appellant to sooner discover and remove the fallen wire. The other requested charge (numbered 7), in addition to being subject to the objection last mentioned, was also on the weight of the evidence. Appellant by other assignments insists that if these charges were incorrectly framed they were nevertheless sufficient to direct the court's attention to the issues to which they related, and that fuller instructions upon those issues should have been given. The rule invoked applies to cases where there has been a failure on the part of the court to present

in his charge a material issue of fact relied upon either as a ground of recovery or as a defense to the action. See Neville v. Mitchell, 28 Texas Civ. App., 89, 66 S. W., 579, and cases there cited. We know of no instance in which it has been held to require further instructions when, in the charge already given, the issue has been substantially covered, or where it is sought merely to have placed before the jury the converse of that which has already been submitted. The issues to which the special requested charges related had been substantially embraced in the general and special instructions previously given.

There are five assignments based upon the failure of the court to include in his general charge, and in connection with the issues of fact submitted as the basis of the right of the plaintiff to recover, the converse of what was there given. The charge of the court in the respects mentioned was not affirmatively erroneous, and the jury was elsewhere told that the burden of proof was on the plaintiffs. The failure to present the issues in a negative form is a matter of which no complaint can be made in the absence of a requested charge supplying the omission. Boone v. Miller, 73 Texas, 562, 11 S. W., 551; Myer v. Fruin, 16 S. W., 868. At the instance of the appellant the court gave special charges presenting the main defenses upon which it relied.

Mrs. Moses, wife of the deceased, was permitted to testify as to the condition of the insulation on the wires of the appellant at and near the place where the accident occurred, as observed by her on Monday following the Thursday on which her husband was killed. To this appellant objected, on the ground that the testimony was immaterial and related to the condition of the wires "after the transaction." There was no evidence that the wire had undergone any change between the time of the accident and the time it was observed by the witness. We think the intervening space would affect the weight, rather than the admissibility of the testimony.

Complaint is also made of the admission of evidence as to the amount of the capital stock for which the appellant had been incorporated. The following is disclosed by the record regarding the testimony and the objections made: Andrews, the chief electrician for appellant, was on the stand and had testified that he supposed the company was incorporated under the laws of the State of Texas. Counsel for appellee then asked this question: "Capitalized at $75,000?" Answer: "That's what they say." Defendant's counsel: "I think the last question is improper. It is immaterial whether it is $5000 or $100,000." Court: "I don't know, if the witness knows about it." Defendant: "We object because it is immaterial and irrelevant, and except to the ruling of the court." Admitting that the testimony was irrelevant and immaterial, and we think it was, that fact alone would not justify a reversal of the judgment. The error was technical, and no injury is claimed as the probable result. The size of the verdict is not assailed as excessive.

The principal ground relied on for a reversal of this judgment, if we may judge from the argument of counsel, is embraced in the objection

to the following portion of the court's charge: "If you find from the evidence that defendant maintained proper and suitable appliances and devices at its power plant for the purpose of indicating when a wire charged with electricity was broken and down on the ground, but if you find that it failed to exercise ordinary care as to the inspection of such appliances, and you further find that if defendant had inspected such devices or appliances, it could and would have seen and known that such charged wire (if any) was broken and down on the ground in time to have prevented the injury, and that defendant failed to exercise ordinary care as to inspecting such appliances (if any) and if you further find that such failure (if any) was negligence, and that said negligence was a proximate cause of the death of said S. H. Moses, and that deceased was not guilty of contributory negligence, and that on account of his death plaintiffs have sustained a pecuniary loss, you will find for plaintiffs." The specific objection is that this charge makes appellant, a private corporation, responsible for the negligent conduct of its servant. It is conceded that the appellant's liability for the death of Moses, if there is any, rests upon the second clause of article 3017 of the Revised Statutes, which reads as follows: "When the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another." The testimony shows that the appliance installed for detecting broken or grounded wires was in good working order. On the night of the accident an employee by the name of Woodward was in charge of the plant, and it was his duty to watch this appliance and discover when any break occurred. Woodward testified that he did make observations at short intervals during the night prior to the time he was notified that Moses had been killed, but discovered nothing wrong. As accounting for the failure of this break to manifest itself on the appliance, appellant contends that the broken wire was the one on which the return current came into the powerhouse, and that the end next to the machinery was not grounded but swung clear of the earth. There was a conflict in the testimony as to whether both ends of the broken wire were on the ground at any time. Witnesses for the appellees testified unequivocally that when they first arrived upon the scene both ends were on the ground and about four or five feet apart. A witness for appellant, one of its employees, who arrived some time afterward, testified that the end of the wire next to the power plant was swinging above the ground. It is not denied that if both ends were on the ground the trouble would have been disclosed in the office. There was testimony tending to show that the wire was probably down as early as eleven o'clock that night. Appellant insists that if there was any negligence in failing to discover that a wire was down, it was that of Woodward, the man in charge, whose duty it was to inspect the appliance and report the trouble; and that for such negligence it is not made liable by the statute. Upon this phase of the action appellees charged in their petition that the appellant, not one of its employees, was guilty of negligence in failing to inspect the appliance installed for the purpose of ascertaining the

condition of its wires, claiming that if this had been done it would have been discovered that one of the wires was down in time to have caused its removal before Moses was injured. While this manner of pleading was, perhaps, a needless statement of details in charging a breach of the general duty to sooner ascertain the condition of the wire and avert the danger, this was, nevertheless, the substance of the complaint. It is well settled by the decisions of this State that a private corporation, such as the appellant, is included within the terms of the statute before referred to, and, under certain circumstances, may be held liable for injuries resulting in death. Fleming v. Loan Agency, 87 Texas, 238, 27 S. W., 126. The duties of private corporations with reference to their employees and to the public, and for the purpose of determining their statutory liability, may be divided into two classes,— the delegable and the non-delegable. The latter consist of those primary, or absolute, duties which the law as a matter of sound public policy for some salutary purpose imposes as a condition upon which the corporation shall exist and carry on a business which may injuriously affect the persons or property of others. A failure to perform that class of duties is regarded as the personal omission or default of the corporation itself, and if such failure be the result of negligence the negligence is that of the corporation; and not that of a servant to whom such non-delegable duties may have been entrusted. Among the primary duties of a corporation operating an electric light plant and using wires for the distribution of a dangerous current of electricity, is that of exercising a proper degree of care, not only in the erection of its lines and instrumentalities, but in maintaining them thereafter in a reasonably safe condition. The performance of the latter obligation carries with it another equally absolute—that of making such an inspection of the condition of its property as may be practicable and reasonably essential to the accomplishment of that end. By this means alone can the corporation vouchsafe to the public that degree of protection which the law requires it to render. Citizens' Tel. Co. v. Thomas, 45 Texas Civ. App., 20, 99 S. W., 879; Standard L. & P. Co. v. Muncey, 33 Texas Civ. App., 416, 76 S. W., 931; San Antonio Gas & E. Co. v. Badders, 46 Texas Civ. App., 559, 103 S. W., 229; Day v. Con. L. & P. Co., 136 Mo. App., 274, 117 S. W., 81; Brown v. Con. L. & P. Co., 109 S. W., 1032; Byerly v. Con. L. & P. Co., 130 Mo. App., 593, 109 S. W., 1066; Dow v. Sunset Tel. Co., 106 Pac., 587; Gentzcow v. Portland Ry. Co., 54 Ore., 114, 102 Pac., 614; Herbert v. Lake Charles I. L. & W. Co., 111 La., 522, 64 L. R. A., 101; Elliott on Roads and Streets, sec. 882; 1 Thompson on Neg., secs. 802-803. The author last referred to says: "A proprietor dealing with so dangerous and deadly an agency as electricity is bound to a continuous inspection, to the end of seeing that his wires are properly insulated, and to the end of discovering any breakage in them, so as to remove the current, or otherwise render them harmless at as early a period as is consistent with a very high degree of care and diligence. The obligation of exercising a degree of care proportionate to the danger obviously demands nothing

less than this.   Such a company will hence become liable to pay dam-
ages for an injury to a person proximately resulting from its failure
to remove, after notice, actual or implied, a wire which had broken
from its poles." The fact that such duties must be discharged through
the agency of servants and employes does not affect their absolute
character.   The corporation can not shift its personal obligations.   In-
ternational & G. N. Ry. Co. v. Kernan, 78 Texas, 294, 9 L. R. A., 703,
22 Am. St., 52, 14 S. W., 668; Cadden v. American, etc., Co., 88 Wis.,
409, 60 N. W., 800; Baird v. Reilly, 35 C. C. A., 78, 92 Fed., 884;
Tierney v. M. & St. L. Co., 33 Minn., 311, 53 Am. Rep., 35; 2 Labat
on Master and Servant, pp. 1616-1625; Evans v. La. Lumb. Co., 111
La., 534, 35 So., 736; Norfolk W. R. Co. v. Houchins, Admr., 95 Va.,
398, 46 L. R. A., 359, 64 Am. St., 791.   We come, then, to the question,
did the charge complained of impose upon the appellant responsibility
for the negligence of its servant?   An answer to this involves the fur-
ther question, was the duty to inspect the appliance which appellant
had provided for ascertaining the condition of its wires one of appel-
lant's primary or personal duties, or was it one that might be assigned?
It appears that appellant was engaged in the business of furnishing
electricity to private individuals for the purpose of illumination, and
perhaps for other uses incidentally connected with the usual and legiti-
mate operation of such an enterprise.   For the purpose, no doubt, of
being able at all times, both during the night as well as the day, to
readily detect whether or not any of its wires were down or broken,
appellant had installed and was maintaining this mechanical device.
By an inspection of this instrumentality the lines themselves could be
inspected.   When this method is shown to be one of the appellant's
own selection, and the one upon which it relied on the night of this
accident, it can not now complain because the court treated it as the
one through which the duty of inspection might have been successfully
performed.   The failure to inspect this appliance was, under the facts
of this case, a failure to inspect the wires.   Diligence in making inspec-
tions is usually to be measured by the opportunity coupled with the
probable demands for a necessity of making them.   Having provided
this convenient device for performing that service, appellant had thereby
enlarged its opportunities, and the fruits of ordinary diligence increased
correspondingly.   If under those conditions the failure to use that ap-
pliance as a means of inspecting the wires was the negligent omission
of a non-delegable duty, the fault was that of the appellant.   Corpora-
tions must of necessity exercise their functions and perform their duties
through the medium of subordinates and employees.   The fact that an
omission is the result of some dereliction on the part of such subordi-
nate or employee to perform a primary duty of the master, makes it
none the less the default of the employer; the negligence may be charge-
able to both.   If a corporation can not assign the duty of making an
inspection requiring a personal examination of its lines for the pur-
pose of ascertaining their condition, and thereby evade liability for
resulting injuries, we do not think the escape is facilitated by adopting

a different method of doing the same thing. The duty is none the less absolute, and imperative, because it may be performed more easily and readily with the aid of a mechanical device. The manner of its performance does not alter its character, or make that delegable which was not so before. We think the legal effect of the paragraph complained of was to submit to the jury the issue of whether or not the appellant had failed to perform one of its primary and absolute duties. Woodward, the man in charge of the plant on that occasion, was, with reference to the performance of this duty, more than a mere servant; he was the agent and representative of the corporation itself. A failure upon his part to examine the appliance for the purpose of ascertaining the condition of the wires was a failure of the corporation itself to inspect. We do not think that the charge complained of is subject to the objection urged.

There is, however, a feature of this case which has not been discussed in the briefs of counsel, but to which we think it proper to refer as bearing upon the question of whether or not the court committed the errors complained of in the charges quoted, or in refusing the special charges with reference to appellant's duty. The testimony indicated that the street or road into which the wire had fallen was outside of the corporate limits of the town of Jacksonville, but that it was a public highway. It was also shown that appellant's wires had been strung across the road without authority having been obtained for that purpose from anyone. If this be true, then the appellant was maintaining a nuisance and was responsible absolutely, and without reference to negligence, for whatever injuries were caused by the maintenance of such an obstruction. Van Horn v. Newark Ry. Co., 48 N. J. Eq., 332, 21 Atl., 1034; Finch v. Riverside Co., 87 Cal., 597, 25 Pac., 765; Jones on Easements, sec. 500; 1 Joyce on Elect., sec. 332, and cases cited. The placing of poles and wires upon a public highway for the purpose of furnishing lights to private persons is not one of the uses for which highways are established, and the right to do so must be acquired from the proper authorities. Freund on Pol. Pow., sec. 658; see cases last cited. The public have a right to the free and unobstructed use of the highways of the country, We know no better illustration of the dangers likely to result from hanging wires over public roads than that which is furnished by the facts of this case. That such a menace is in law an obstruction can hardly be questioned. It is true that appellees have not sought to place their right to recover upon that ground, but there is nothing in the pleadings which would preclude the consideration of that fact in determining appellant's liability.

It is unnecessary to discuss the remaining assignments of error, and the judgment is accordingly affirmed.

*Affirmed.*

Writ of error refused.